No. 70,408

ARNOLDO ORTEGA and EMMA TOVAR, *Plaintiffs*, v. IBP, INC., *Defendant*.

(874 P.2d 1188)

Opinion filed May 27, 1994.

*David O. Alegria*, of McCullough, Wareheim & LaBunker, of Topeka, and *David W. Hauber*, of Boddington & Brown, Chtd., of Kansas City, argued the cause and were on the brief for plaintiffs.

*John J. Jurcyk, Jr.*, of McAnany, Van Cleave & Phillips, P.A., of Kansas City, argued the cause, and *Terri S. Bezek* and *Katherine E. Rich*, of the same firm, were with him on the brief for defendant.

*Kirk W. Lowry*, of Palmer & Lowry, of Topeka, was on the brief for *amicus curiae* Kansas Trial Lawyers Association.

*Steve R. Fabert*, of Fisher, Patterson, Sayler & Smith, of Topeka, was on the brief for *amicus curiae* Kansas Association of Defense Counsel.

The opinion of the court was delivered by

ABBOTT, J.: This case is filed in the United States District Court for the District of Kansas and comes to this court by certification under the Uniform Certification of Questions of Law Act, K.S.A. 60-3201 *et seq.* Judge Kathryn H. Vratil certified to this court the following question:

Where an employee-at-will claims that an employer terminated his or her employment in retaliation for the exercise of statutory rights under the Workers' Compensation Act, K.S.A. 44-501 *et seq.*, and that he or she is therefore entitled to maintain a cause of action for wrongful discharge under Kansas law, is plaintiff required to prove that claim by clear and convincing evidence?

Highly summarized from the facts given by the certifying court, the facts are as follows:

Plaintiff Emma Tovar began working for defendant IBP, Inc., in 1975. Plaintiff Arnoldo Ortega began working for IBP in 1988. Both plaintiffs were employees-at-will. Both were injured on the job, Tovar in April 1989 and Ortega in May 1990. Tovar filed a workers compensation claim in August 1989 and Ortega filed a workers compensation claim in November 1990. Both plaintiffs were in the care of a physician and both complained of continued pain.

IBP placed Tovar on light duty and in a position within her physical capabilities after she suffered a back injury, but she eventually obtained temporary total disability benefits and was off work completely. She returned to work but then received a series of medical excuses for four- to six-week periods and was again off work completely. In April 1991, Tovar's physician gave her a six-month off-work slip. IBP questioned why Tovar had been and would be off work for so long, and eventually Tovar's physician released her on May 31, 1991, for part-time work. IBP informed Tovar's attorney that she was to report to work on June 17, 1991, but this date was later changed to July 1, 1991. Tovar was aware that she was to begin work on that date, but she failed to report to work on that date. There is some dispute as to whether she ever reported for work after July 1, 1991. IBP ultimately gave Tovar another deadline by which to return to work, August 16, 1991, which was in turn extended to August 19, 1991. When Tovar failed to report on that date, IBP terminated her employment. IBP contends the termination was due to "job abandonment."

After an injury to his shoulder, Ortega was placed in a restricted-duty job where he would only use one arm. He later un-

derwent surgery on his shoulder. On November 8, 1990, Ortega's one-arm restriction was lifted and he was permitted to use his injured arm as long as he did not raise it over shoulder level or lift more than five pounds. Because IBP had no such restricted-duty position available, it placed Ortega on a medical leave of absence, during which time he received temporary total disability benefits. On January 7, 1991, Ortega's physician determined that he could lift up to 10 pounds with his injured arm. Ortega returned to work on January 14, 1991. On May 13, 1991, Ortega was assigned to the dew claw machine in keeping with his medical restrictions. He worked the machine that day with no complaints. On May 14, 1991, he was given an unscheduled break because the machine broke down. After resuming work, he requested a break because his hands were hurting. His supervisor declined the request. Ortega ceased working his position and refused to resume work when requested. Ortega was taken to a supervisor's office, where a verbal altercation ensued. Ortega was suspended at that time. On May 15, 1991, the IBP personnel director interviewed Ortega and reviewed his file. On May 16, 1991, IBP terminated Ortega. IBP contends Ortega was terminated for misconduct and insubordination.

The plaintiffs have included a substantial statement of facts in their brief, providing facts not indicated in the certifying court's statement of facts. The plaintiffs also challenge the propriety of an evidentiary ruling made by the certifying court. The defendant filed a motion to strike the facts portion of the plaintiffs' brief. The motion was denied subject to further consideration at oral argument and final submission. Because the question before this court involves a question of law not related to the facts of one particular case, the plaintiffs' statement of facts is not relevant to the appeal. The propriety of the certifying court's findings of fact and evidentiary rulings is not before this court. If either party wishes to add facts to those the certifying federal court furnishes this court, any changes must be made in the federal court. The same rule applies to evidentiary rulings made by the federal court.

This court permitted *amicus curiae* briefs to be filed by the Kansas Trial Lawyers Association and the Kansas Association of Defense Counsel.

Kansas has long adhered to the doctrine of employment-at-will. The employment is terminable at the will of either the employer or the employee. *Pilcher v. Board of Wyandotte County Comm'rs*, 14 Kan. App. 2d 206, Syl. ¶ 1, 787 P.2d 1204, *rev. denied* 246 Kan. 768 (1990). "[A]n employer may discharge his 'at-will employee' for good cause, for no cause, or even for a wrong cause, without incurring liability to the employee for wrongful discharge." *Morriss v. Coleman Co.*, 241 Kan. 501, 508, 738 P.2d 841 (1987). However, the doctrine of employment-at-will has been gradually eroded in Kansas and in other states.

In *Murphy v. City of Topeka*, 6 Kan. App. 2d 488, 630 P.2d 186 (1981), the Court of Appeals recognized the tort of retaliatory discharge. "[T]he discharge of an employee in retaliation for filing a workmen's compensation claim is actionable at law and may support an award of both actual and punitive damages." 6 Kan. App. 2d 488, Syl. ¶ 7.

"The Workmen's Compensation Act provides efficient remedies and protection for employees, and is designed to promote the welfare of the people in this state. It is the exclusive remedy afforded the injured employee, regardless of the nature of the employer's negligence. To allow an employer to coerce employees in the free exercise of their rights under the act would substantially subvert the purpose of the act." 6 Kan. App. 2d at 495-96.

Since *Murphy*, the tort of retaliatory discharge has been expanded beyond discharge in retaliation for filing a workers compensation claim. In *Coleman v. Safeway Stores, Inc.*, 242 Kan. 804, Syl. ¶ 3, 752 P.2d 645 (1988), this court held that "[a]llowing an employer to discharge an employee for being absent or failing to call in an anticipated absence as the result of a work-related injury allows an employer to indirectly fire an employee for filing a workers' compensation claim, a practice contrary to the public policy of this state." Thus, even where the employee had not yet filed a workers compensation claim, an employer is prohibited from firing an employee who is absent from work due to a work-related injury and who might file a workers compensation claim. This court also held that an action for retaliatory discharge existed notwithstanding that a collective bargaining agreement protected the worker from such discharge, overruling prior decisions to the

contrary. 242 Kan. 804, Syl. ¶ 4. Thus, the tort of retaliatory discharge applies to both at-will employees and to employees covered by a collective bargaining agreement.

The same day the decision in *Coleman* was filed, this court recognized the tort of retaliatory discharge for "whistle-blowing." *Palmer v. Brown*, 242 Kan. 893, 752 P.2d 685 (1988). Noting that at-will employees are statutorily protected from discharge in certain situations, such as where the employee reports child abuse, reports abuse of certain adults in need of care, testifies before the Secretary of Human Resources, or reports unsafe or unlawful working conditions to the Secretary of Human Resources, this court held that at-will employees are also protected from discharge in retaliation for reporting Medicaid fraud. This court recognized the public policy of encouraging citizens to report crimes and held that public policy also "requires that citizens in a democracy be protected from reprisals for performing their civil duty of reporting infractions of rules, regulations, or the law pertaining to public health, safety, and the general welfare." 242 Kan. at 899-900. Thus, the "termination of an employee in retaliation for the good faith reporting of a serious infraction of such rules, regulations, or the law by a co-worker or an employer to either company management or law enforcement officials (whistle-blowing) is an actionable tort." 242 Kan. at 900.

The Court of Appeals recognized the cause of action where an employee was discharged when the employer believed she was the source of an uncomplimentary newspaper article. *Pilcher*, 14 Kan. App. 2d 206. The court held that even though the information allegedly reported to the newspaper did not show that the employer violated the law, the employer's actions as set forth in the article were "certainly sufficiently harmful to the public interest to qualify it as the basis for a claim of retaliatory discharge for 'whistle-blowing.' " 14 Kan. App. 2d at 213.

In *Brown v. United Methodist Homes for the Aged*, 249 Kan. 124, 135, 814 P.2d 72 (1991), this court discussed the exception to the employment-at-will doctrine which permits

"suits of a tort nature for retaliatory discharge based on the theory that dismissal of employees for reasons violative of a particular public policy are actionable.

Conduct of an employer violative of public policy and giving rise to a cause of action has been recognized when an employee is discharged in retaliation for opposing an illegal or unethical activity of the employer, in retaliation for filing workers compensation claims, in retaliation for exercising rights under labor-management relations statutes, as a penalty for refusing to take a polygraph exam, as a penalty for taking time to serve on jury duty, and for various other violations of public policy interests. [Citation omitted.]"

This court also recognized an exception to the employment-at-will doctrine based upon an implied contract theory. In *Brown*, the plaintiff had alleged that he was discharged both in retaliation for filing a workers compensation claim and in violation of an implied contract.

The Court of Appeals took the tort of retaliatory discharge yet a step further in *Marinhagen v. Boster, Inc.*, 17 Kan. App. 2d 532, Syl. ¶ 5, 840 P.2d 534 (1992), *rev. denied* 252 Kan. 1092 (1993), stating:

"When a married couple both work for the same employer, and one exercises his or her rights under the Workers Compensation Act following an on-the-job injury, the employer may not retaliate against the non-injured spouse by terminating him or her from employment any more than the employer can retaliate against the injured spouse. To allow such would frustrate the purpose of our opinion in *Murphy v. City of Topeka*, 6 Kan. App. 2d 488, 630 P.2d 186 (1981), to protect employees by allowing them to freely exercise their rights under the Act."

Thus, it is clear that this state has recognized exceptions to the doctrine of employment-at-will when an employee is discharged in contravention of public policy. The question before this court is this: What is the standard of proof required to prevail in an action for retaliatory discharge?

Generally, the standard of proof in a civil action in Kansas is proof by a "preponderance of the evidence." *Cf. In re Estate of Stratmann*, 248 Kan. 197, 202, 806 P.2d 459 (1991); *State v. Parson*, 15 Kan. App. 2d 374, 380, 808 P.2d 444 (1991). A preponderance of the evidence standard is required to obtain workers compensation benefits. K.S.A. 44-501(a); K.S.A. 44-508(g). The standard is also used to disqualify a former employee from unemployment benefits. *National Gypsum Co. v. Kansas Employment Security Bd. of Review*, 244 Kan. 678, 687, 772 P.2d 786 (1989).

Several actions, however, require proof by clear and convincing evidence. Because there is a presumption of honesty and fair dealing, the clear and convincing evidence standard is applied in actions for fraud. See, *e.g.*, *Newell v. Krause*, 239 Kan. 550, 722 P.2d 530 (1986). Clear and convincing evidence is required to rebut the statutory presumption that the useful life of a product is 10 years, although only a preponderance of evidence is needed to survive a summary judgment motion. K.S.A. 1993 Supp. 60-3303(b)(1); *Baumann v. Excel Industries, Inc.*, 17 Kan. App. 2d 807, Syl. ¶ 5, 845 P.2d 65, *rev. denied* 252 Kan. 1091 (1993). Clear and convincing evidence is also required, for example, in guardianship proceedings, K.S.A. 59-3013; for mental illness commitments, K.S.A. 1993 Supp. 59-2917; in attorney discipline proceedings, Supreme Court Rule 211(f) (1993 Kan. Ct. R. Annot. 178); to determine the existence of an agency relationship, *Barbara Oil Co. v. Kansas Gas Supply Corp.*, 250 Kan. 438, 827 P.2d 24 (1992) (also phrased as "clear and satisfactory evidence"); to void a written consent to adoption, K.S.A. 1993 Supp. 59-2114; and to prevail on a claim for punitive damages, K.S.A. 1993 Supp. 60-3701(c).

In *Palmer*, 242 Kan. 893, this court stated that retaliatory discharge for whistle-blowing must be proven by clear and convincing evidence:

"To maintain an action in tort for retaliatory discharge for 'whistle-blowing', an employee has the burden of proving by clear and convincing evidence, under the facts of the case, a reasonably prudent person would have concluded the employee's co-worker or employer was engaged in activities in violation of rules, regulations, or the law pertaining to public health, safety, and the general welfare; the employer had knowledge of the employee's reporting of such violation prior to discharge of the employee; and the employee was discharged in retaliation for making the report. However, the whistle-blowing must have been done out of a good faith concern over the wrongful activity reported rather than from a corrupt motive such as malice, spite, jealousy or personal gain." 242 Kan. 893, Syl. ¶ 3.

At least one federal district court in Kansas has applied this court's statement in *Palmer* of a clear and convincing evidence standard for whistle-blowing cases to actions for wrongful discharge in retaliation for filing a workers compensation claim. In

the related cases of *Roskob v. IBP, Inc.*, 810 F. Supp. 1229 (D. Kan. 1993), and *Madrigal v. IBP, Inc.*, 811 F. Supp. 612 (D. Kan. 1993), Judge Belot applied the clear and convincing standard based on this court's language in *Palmer*. Roskob was injured on the job and alleged that she was fired in retaliation for intending to file a workers compensation claim, and Madrigal, Roskob's daughter, alleged that she was fired in retaliation for her mother's intent to file a workers compensation claim. Judge Belot granted IBP's motions for summary judgment in both cases, finding that neither Roskob nor Madrigal could sustain the clear and convincing burden of proof.

Further, the Court of Appeals in *Pilcher*, 14 Kan. App. 2d at 214, noted that the trial judge instructed the jury that the plaintiff was required to prove " 'by clear and convincing evidence that she was discharged for filing a claim under the Workers' Compensation Act.' " Although the court did not address the propriety of the clear and convincing standard in workers compensation retaliation cases, the court implicitly approved application of that standard.

There are two questions necessary to the resolution of the certified question in this case. First, does the same standard of proof apply in both whistle-blowing retaliation cases and workers compensation retaliation cases? Second, if the same standard of proof does apply, what is that standard?

The plaintiffs contend that whistle-blowing retaliation implicates different concerns than workers compensation retaliation. They argue that in whistle-blowing cases the employee has taken some kind of affirmative action in choosing to report a co-employee's or an employer's violations, whereas an employee filing a workers compensation claim has not taken affirmative action because he or she is merely seeking compensation for a work-related injury not his or her fault.

The defendant responds that, like the whistle-blower, an employee who files a workers compensation claim has also taken affirmative action in deciding to file the claim. The defendant also notes that the rationale for both whistle-blowing retaliatory discharge actions and workers compensation retaliatory discharge

actions is the same: both are judicially-recognized exceptions to the employment-at-will doctrine based on public policy. It therefore contends that the same standard of proof should be required in both types of actions. We agree.

Both whistle-blowing and workers compensation retaliatory discharge actions are exceptions to the very well-established doctrine of employment-at-will. Both are tort actions for the same type of conduct of the employer: firing an employee in retaliation for something the employee has done. It is true that a workers compensation retaliation case stems ultimately from an employee's on-the-job injury which is normally not the employee's fault. But a whistle-blower also has no control over the fact that his employer or a co-worker has engaged in illegal or other unacceptable practices. Further, although the employee's claim for workers compensation benefits seems to more directly benefit only the employee, whereas the whistle-blower is taking action to benefit a greater part of the community, the Court of Appeals in *Murphy*, 6 Kan. App. 2d at 495-96, recognized that workers compensation is "designed to promote the welfare of the people in this state."

The tort of wrongful discharge in retaliation for filing a workers compensation claim is based on the same public policy as the whistle-blowing retaliatory discharge tort. In recognizing the whistle-blowing retaliatory discharge tort in *Palmer*, this court was merely extending the public policy of *Murphy* to other situations. Both exceptions to the employment-at-will doctrine developed to control the actions of employers which violate public policy. An employer violates public policy when it fires an employee for whistle-blowing or for filing a workers compensation claim. We find no justification for applying different standards of proof in whistle-blowing and workers compensation retaliatory discharge cases. The basis of both workers compensation retaliation cases and whistle-blowing retaliation cases is the employer's bad motive in discharging the employee. Both types of retaliatory discharge actions should require the same standard of proof.

The next question, then, is what standard of proof is required?

As discussed above, this court in *Palmer*, 242 Kan. 893, required that whistle-blowing retaliatory discharge actions be

proven by clear and convincing evidence. The defendant and the Kansas Association of Defense Counsel (KADC) urge this court to apply that standard to workers compensation retaliation cases.

The plaintiffs and the Kansas Trial Lawyers Association (KTLA), on the other hand, urge this court to apply a mere preponderance of evidence standard. The KTLA notes that the standard of proof was not at issue in *Palmer*, and it urges this court to consider the statement that clear and convincing evidence is required as dicta.

The *Palmer* court engaged in no discussion about why a clear and convincing standard of proof, rather than the typical preponderance of the evidence standard, was utilized.

The plaintiffs note that retaliatory discharge cases require plaintiffs to prove their cases by circumstantial evidence because the employer seldom admits to a retaliatory motive in discharging an employee. They contend that a higher standard of proof is inconsistent with proving claims by circumstantial evidence. Requiring clear and convincing evidence will erode an employee's right to sue for retaliatory discharge, and the tort of retaliatory discharge is narrow enough without requiring a higher standard of proof. The plaintiffs insist that there are no good reasons for requiring a higher standard.

The plaintiffs stress that a higher burden becomes especially difficult when employees are not permitted to present evidence that a particular employer had a pattern of discharging employees in retaliation. They state, "In the instant case, the district court has barred any pattern and practice evidence" and they cite numerous cases which hold that evidence of an employer's pattern of retaliatory conduct is admissible. We emphasize again that the certifying court's evidentiary rulings are not before this court. Evidentiary rulings are made on a case-by-case basis. Where, as here, this court is setting forth a rule of law to be followed in all cases of retaliatory discharge, consideration of the evidentiary rulings in one such case is inappropriate.

The KTLA joins the plaintiffs in urging a preponderance of the evidence standard. It encourages this court to adopt a standard of proof consistent with that in discrimination cases. It also notes

that a clear and convincing standard is difficult for juries to understand. Further, the KTLA urges in the interest of fairness that this court adopt the preponderance standard because retaliatory discharge evidence consists primarily of circumstantial evidence and a higher standard makes retaliatory discharge claims difficult to prove.

The defendant suggests that a clear and convincing evidence standard is not too difficult. It stresses that "clear and convincing evidence" is a quality of evidence, not a quantity of evidence. It also notes that a standard of clear and convincing evidence does not preclude proof by circumstantial evidence. The defendant urges this court to balance "the interest of the employee and the interest of the employer who is at risk of being sued by every employee who has been terminated and coincidentally has filed a workers' compensation claim." It emphasizes the strong status of the employment-at-will doctrine in Kansas. Because retaliatory discharge is based on the employer's intent and not on the employer's negligence, it should require a higher standard of proof.

The defendant also suggests that because the plaintiffs here seek punitive damages in addition to compensatory damages, and because punitive damages require proof by clear and convincing evidence, the plaintiffs have somehow accepted the burden of proving retaliatory discharge by clear and convincing evidence. This suggestion is entirely untenable.

The KADC joins the defendant in urging this court to adopt the standard of clear and convincing evidence. The KADC, like defendant, claims that an easy standard of proof will amount to a guarantee of employment for injured workers. It also posits that utilization of the clear and convincing standard in other cases has produced good results.

The plaintiffs and defendant also engage in an exhausting discussion and comparison of the treatment of retaliatory discharge actions in other states and the standard of proof other jurisdictions require in such cases.

The plaintiffs cite cases from Illinois and Indiana, two jurisdictions relied upon by the *Murphy* court in recognizing for the first time the tort of retaliatory discharge in Kansas. Both of these

states utilize a preponderance of the evidence standard. See *Netzel v. United Parcel Service, Inc.*, 181 Ill. App. 3d 808, 812, 537 N.E.2d 1348, *lv. to appeal denied* 127 Ill. 2d 620 (1989); *Peru Daily Tribune v. Shuler*, 544 N.E.2d 560, 564 (Ind. App. 1989). In *Netzel*, the court noted that retaliatory discharge cases are most similar to breach of employment contracts by wrongful discharge and held that the traditional tort analysis should be applied to retaliatory discharge cases. The court thus held that only a preponderance of evidence was required. 181 Ill. App. 3d at 812. In *Peru Daily Tribune*, the question before the court was whether there was error in a jury instruction which did not contain "but for" language, although the "but for" test was the test adopted for retaliatory discharge cases. The court, although not discussing the standard of proof required in retaliatory discharge cases, approved a jury instruction which required that the retaliatory discharge be proven by a preponderance of the evidence. 544 N.E.2d at 564.

Further, the plaintiffs point out that the New Mexico Supreme Court in 1989 stepped back from its earlier holding that retaliatory discharge must be proven by clear and convincing evidence and changed the standard to a preponderance of the evidence. *Chavez v. Manville Products Corp.*, 108 N.M. 643, 777 P.2d 371 (1989). There, the court held that because the tort of retaliatory discharge is the sole exception to the employment-at-will doctrine in the state, "requiring the at-will employee to show the discharge contravened a clear mandate of public policy . . . sufficiently limits the exception to at-will employment." 108 N.M. at 649. Further, the court stated that, because retaliatory discharge is an intentional tort, "the standard of proof required in retaliatory discharge cases should be consistent with the majority of other intentional torts—proof by a preponderance of the evidence." 108 N.M. at 649.

Both the plaintiffs and the defendant spend a substantial portion of their briefs discussing the language other jurisdictions employ in describing what must be proven to succeed in a retaliatory discharge action. They cite various jurisdictions which have held that retaliation must be the "sole" reason for discharge, that re-

taliation must be "a motivating factor" in the discharge, that re-
taliation must be "a determinative factor" in the discharge, that
the evidence must "exclude other reasonable hypotheses with a
fair amount of certainty," that there must be a "causal link by
direct evidence" or by "compelling circumstantial evidence," or
that retaliatory motive must be more than "mere speculation" and
must be established with "reasonable certainty and probability."

The plaintiffs include in their brief an appendix listing states
which recognize retaliatory discharge actions and what standard
of proof each state requires or whether it follows the burden-
shifting analysis set forth by the United States Supreme Court
for Title VII discrimination cases in *McDonnell Douglas Corp. v.
Green,* 411 U.S. 792, 36 L. Ed. 2d 668, 93 S. Ct. 1817 (1973).
The defendant also points out that some jurisdictions do not apply
the burden-shifting analysis under *McDonnell Douglas* to retali-
ation cases and that jurisdictions which do apply the burden-shift-
ing analysis in workers compensation retaliation cases also require
the plaintiff to establish a causal connection between the workers
compensation claim and the discharge before shifting the burden
to the employer to produce evidence of a valid reason for the
discharge. Further, the defendant stresses that in the burden-
shifting analysis, the plaintiff still bears the burden to prove that
the employer's reasons for discharge are mere pretext. The de-
fendant also suggests that even under a burden-shifting analysis
the plaintiff ultimately bears the burden of persuasion. See *St.
Mary's Honor Center v. Hicks,* 509 U.S. ___, 125 L. Ed. 2d 407,
113 S. Ct. 2742 (1993).

We find the plethora of cases cited by both parties to be of
limited assistance. What the cases and the discussion by the par-
ties make clear is that each state treats retaliatory discharge ac-
tions in its own way. Those jurisdictions which recognize the tort
of retaliatory discharge each employ different language in de-
scribing the methods or standard by which the action must be
proven.

An analysis of retaliatory discharge actions in other jurisdictions
only reinforces that this court should decide the question before
it based on Kansas law and not on the law of any other juris-

diction. The Court of Appeals first recognized the tort of retaliatory discharge not because other jurisdictions had done so, but because recognition of the cause of action was in keeping with sound public policy. Likewise, the appellate courts of this state did not extend the tort of retaliatory discharge beyond those instances where the employee has filed a workers compensation claim because other states had done so, but again, because extending the cause of action was in keeping with sound public policy of the State of Kansas.

In Kansas, retaliatory discharge actions must establish that the discharge was "based on" the employee's exercise of some right. *Brown v. United Methodist Homes for the Aged,* 249 Kan. 124, 147, 814 P.2d 72 (1991).

Kansas has adopted the *McDonnell Douglas* burden-shifting analysis for employment discrimination actions. *Woods v. Midwest Conveyor Co.,* 231 Kan. 763, 648 P.2d 234 (1982). The burden

"is on the complainant to prove by a preponderance of the evidence that the respondent is guilty of a discriminatory practice. Initially, the complainant must present a prima facie case of discrimination. Then the burden of going forward with the evidence shifts to respondent and this burden may be discharged by evidence of a legitimate, nondiscriminatory reason for respondent's conduct. Once the respondent discharges this obligation, the complainant must continue with the burden of proving by a preponderance of the evidence that the reasons offered by respondent were merely a pretext for discrimination." 231 Kan. 763, Syl. ¶ 2.

See *Beech Aircraft Corp. v. Kansas Human Rights Comm'n,* 254 Kan. 270, 864 P.2d 1148 (1993). To establish a prima facie case of discrimination, the plaintiff must show that he or she is a member of a racial minority, that the employer was seeking applicants for a position for which he or she applied and was qualified, that he or she was rejected for the position despite his or her qualifications, and that after rejecting the plaintiff the employer continued to seek applicants with his or her qualifications. *McDonnell Douglas,* 411 U.S. at 802.

A somewhat modified burden-shifting analysis is also applied in cases where a public employee is terminated after having exercised his or her right to free speech protected by the First Amendment. *Larson v. Ruskowitz,* 252 Kan. 963, 850 P.2d 253

(1993). In such cases, the public employee must first make a prima facie showing that his or her protected communication was a motivating factor for the termination (or suspension from employment), and upon such a showing the burden shifts to the governmental employer to produce evidence it would have terminated or suspended the employee even without the communication. 252 Kan. 963, Syl. ¶ 4. The *Larson* court distinguished cases involving violation of a public employee's free speech rights from whistle-blowing retaliatory discharge cases, noting that whistle-blowing and workers compensation retaliatory discharge actions protect employees in both the public and private sectors, while violation of free speech actions only are available to public employees.

Answering the certified question requires this court to balance the tradition and status of the employment-at-will doctrine with the public policy protecting employees-at-will from employer retaliation. The appellate courts of this state in recognizing retaliatory discharge actions have already decided that the balance works in favor of the employee to an extent. The question, however, is to what extent.

The defendant maintains that requiring a standard of clear and convincing evidence for a retaliatory discharge case places no greater burden on a plaintiff than would a preponderance of the evidence standard. It notes that clear and convincing evidence may be established by circumstantial evidence. The defendant cites *Turon State Bank v. Estate of Frampton*, 253 Kan. 621, 861 P.2d 117 (1993), where this court recognized that fraud cases, which require proof by clear and convincing evidence, are frequently proven by circumstantial evidence because there is rarely direct and positive testimony of reliable witnesses. The plaintiffs, on the other hand, insist that requiring clear and convincing evidence in retaliatory discharge cases, which are generally proven by circumstantial evidence because rarely will an employer admit to having discharged an employee in retaliation for exercising a right, will for all practical purposes extinguish the cause of action as few, if any, plaintiffs will be able to meet such a burden.

"Preponderance of evidence" is defined as "evidence which is of greater weight or more convincing than the evidence which is

offered in opposition to it." Black's Law Dictionary 1182 (6th ed. 1990). In other words, a "preponderance of the evidence" means that evidence which shows a fact is more probably true than not true.

The United States Supreme Court has noted that "clear and convincing evidence" is an intermediate standard of proof. *Santosky v. Kramer*, 455 U.S. 745, 756-57, 71 L. Ed. 2d 599, 102 S. Ct. 1388 (1982). The Court has stated that "[b]ecause the preponderance-of-the-evidence standard results in a roughly equal allocation of the risk of error between litigants, we presume that this standard is applicable in civil actions between private litigants unless 'particularly important individual interests or rights are at stake.' [Citations omitted.]" *Grogan v. Garner*, 498 U.S. 279, 286, 112 L. Ed. 2d 755, 111 S. Ct. 654 (1991).

Over the years, this court has discussed clear and convincing evidence in the context of many issues and causes of action, and some confusion exists as to how a jury should be instructed. We hold that clear and convincing evidence is not a quantum of proof but, rather, a quality of proof. A party having the burden of proving a discharge from employment in retaliation for having filed a workers compensation claim must establish that claim by a preponderance of the evidence, but the evidence must be clear and convincing in nature. It is clear if it is certain, unambiguous, and plain to the understanding. It is convincing if it is reasonable and persuasive enough to cause the trier of facts to believe it. *Chandler v. Central Oil Corp.*, 253 Kan. 50, 58, 853 P.2d 649 (1993).