**Jennie R. NEWELL, Plaintiff,**

v.

**K–MART CORPORATION, Defendant.**

**No. 97–2258–RDR.**

United States District Court, D. Kansas.

Jan. 27, 1999.

Scott J. Bloch, Andrew R. Ramirez, Matthew D. All, Stevens & Brand, L.L.P., Lawrence, KS, for Jennie R Newell, plaintiff.

Kevin M. Fowler, William G. Haynes, Christina Collins, Frieden, Haynes & Forbes, Topeka, KS, for K–Mart Corporation, defendant.

## MEMORANDUM AND ORDER

ROGERS, Senior District Judge.

This case is now before the court upon a long-pending motion for new trial or judgment notwithstanding the verdict. This is a retaliatory discharge case. The jury in this case was given two questions pertaining to liability. The jury returned a verdict for the plaintiff by finding that plaintiff was discharged "in retaliation for *sustaining an injury* for which she could assert a claim under the Kansas Workers' Compensation Act." (emphasis added). The jury found in defendant's favor on the other question when it determined that plaintiff was *not* discharged "in retaliation for exercising her rights under the Workers' Compensation Act." The jury awarded plaintiff $15,000 in back pay and $30,000 for embarrassment, humiliation and emotional distress.

Defendant asserts in the instant motion that relief should be granted from the verdict because it is contrary to the evidence and the product of mistaken legal and evidentiary rulings.

## LEGAL STANDARDS

A fellow judge of this district set forth the standards for granting a new trial in *Eichenwald v. Krigel's, Inc.,* 908 F.Supp. 1531, 1569 (D.Kan.1995):

Motions for a new trial are committed to the sound discretion of the trial court. *McDonough Power Equipment, Inc. v. Greenwood,* 464 U.S. 548, 556, 104 S.Ct. 845, 850, 78 L.Ed.2d 663 (1984); *Hinds v. General Motors Corp.,* 988 F.2d 1039, 1046 (10th Cir.1993). In reviewing a motion for new trial the court must view the evidence in the light most favorable to the prevailing party. *Griffin v. Strong,* 983 F.2d 1544, 1546 (10th Cir.1993). Moreover, the court should "exercise judgment in preference to the automatic reversal for 'error' and ignore errors that do not affect the essential fairness of the trial." *McDonough Power Equipment, Inc.,* 464 U.S. at 553, 104 S.Ct. at 848. No error in the admission or exclusion of evidence, and no error in ruling or order of the court or anything done or omitted by the court can be grounds for granting a new trial unless the error or defect affects the substantial rights of the parties. *Rasmussen Drill-*

*ing, Inc. v. Kerr–McGee Nuclear Corp.,* 571 F.2d 1144, 1148–49 (10th Cir.), *cert. denied,* 439 U.S. 862, 99 S.Ct. 183, 58 L.Ed.2d 171 (1978); Fed.R.Civ.P. 61.

Before granting a motion for judgment notwithstanding the verdict, we must determine whether, viewing the evidence in a light most favorable to the nonmoving party, the inferences to be drawn from the evidence are so clear that reasonable minds could not differ as to the conclusion. *McKenzie v. Renberg's Inc.,* 94 F.3d 1478, 1483 (10th Cir. 1996) *cert. denied,* 520 U.S. 1186, 117 S.Ct. 1468, 137 L.Ed.2d 682 (1997). In this case, a diversity case, the evidence must be examined in light of the burden of proof dictated by state law. *Vasey v. Martin Marietta Corp.,* 29 F.3d 1460, 1464 (10th Cir.1994).

The Kansas law·governing retaliatory discharge was recently reviewed by the Tenth Circuit in *Sanjuan v. IBP, Inc.,* 160 F.3d 1291, 1298–99 (10th Cir.1998):

Kansas has adopted the general rule that an employment-at-will can be terminated by either party at any time. *Johnson v. Nat'l Beef Packing Co.,* 220 Kan. 52, 551 P.2d 779, 781 (Kan.1976). Kansas recognizes an exception to the general rule where an employer discharges an employee in retaliation for the exercise of an employee's rights under the Kansas Workers' Compensation Act. *Ortega ·v. IBP, Inc.,* 255 Kan. 513, 874 P.2d 1188 (Kan. 1994). In order to establish a claim of retaliatory discharge, the plaintiff has the initial burden to show: (1) he or she filed a claim for workers' compensation benefits, or sustained an injury for which he might assert a future claim for such benefits; (2) that the employer had knowledge of plaintiff's compensation claim, or the fact that he had sustained a work-related injury for which the plaintiff might file a future claim for benefits; (3) that the employer terminated the plaintiff's employment; and (4) that a causal connection existed between the protected activity or injury, and the termination. *Chaparro v. IBP, Inc.,* 873 F.Supp. 1465, 1472 (D.Kan.1995). Employees can recover by proving that the discharge was "based on," "because of," "motivated by" or "due to" the employer's

intent to retaliate. *Brown v. United Methodist Homes for the Aged,* 249 Kan. 124, 815 P.2d 72 (Kan.1991). Employees do not need to show that retaliation was the employer's sole motive or reason for the termination. *Id.* Once plaintiff has made his or her prima facie case, the burden shifts to the defendant employer to show an articulate, non-retaliatory reason for the discharge. *Rosas v. IBP, Inc.,* 869 F.Supp. 912, 916 (D.Kan.1994). If the defendant meets its burden, the burden shifts back to the plaintiff but the plaintiff must show clear and convincing evidence that he or she was terminated in retaliation for exercising rights under the Workers' Compensation Act. *Ortega,* 874 P.2d at 1197–98.

## FACTUAL BACKGROUND

The evidence in this case established without dispute that plaintiff started working for defendant at a large warehouse/distribution center in 1980. She was terminated on June 8, 1995. Plaintiff's job during the last few years of her employment by defendant involved loading and unloading various merchandise from trailers and putting the merchandise on a conveyor system. It required heavy lifting. Plaintiff and her fellow employees felt some pressure to work quickly enough to avoid backing up the system. Defendant was "self-insured" for workers' compensation claims. Defendant rewarded distribution centers that reported low workplace injury rates.

Defendant allowed employees an annual amount or "bank" of hours which could be used for leave time for any reason. Under defendant's policy, time spent seeing a doctor because of a work-related injury was not supposed to be counted as leave time which would be subtracted from the bank of hours.

Defendant also allowed employees vacation hours. The vacation hours were split between single days and weeks. In other words, so many single days could be used and so many full weeks could be used. But, after all the single days were used, an employee could only take a full week's vacation if he had a week's vacation left.

On June 8, 1995, plaintiff was informed that she was fired for violating defendant's absenteeism policy when she did not report to work on June 7, 1995. She had used all of her single days of vacation and all but 1.8 hours of her bank of hours for the year prior to June 7. Even though plaintiff still had a full week of vacation remaining when she was fired, defendant did not count the day plaintiff took off as part of a week's vacation because plaintiff had not asked in advance for a week's vacation. Instead, defendant reverted to the bank of hours. Because the time plaintiff took off exceeded the number of hours in her bank of hours, plaintiff was automatically terminated.

Prior to taking the day off, plaintiff asked her departmental manager to check if plaintiff had any single days of vacation time left. The manager did not get back to plaintiff. Plaintiff assumed incorrectly that she had a single day of vacation left.

During plaintiff's work history, she had not made a worker's compensation claim or suffered any serious injury until 1994. In 1994, plaintiff made a claim on the basis of a shoulder injury which ultimately required surgery that same year. Plaintiff returned to full duty in November 1994. In February 1995 plaintiff took some time off. One day she visited a Dr. Wertzberger and reported neck pain. She returned to work the next day with restrictions limiting her to light duty. After one day she asked that the restrictions be lifted. In May 1995, plaintiff received a check as her payment for the workers' compensation award she received after filing a claim regarding her shoulder injury.

As previously noted, on June 8, 1995 plaintiff was discharged allegedly because she exceeded her bank of hours. However, if her visit to the doctor in February or other days she missed about the same time had not been deducted from plaintiff's bank of hours or if plaintiff would have been allowed to use a week's vacation to cover the last day she took off work, then she would not have exceeded her bank of hours in violation of the defendant's absenteeism policy.

## DEFENDANT'S ARGUMENTS

■ Defendant makes a number of connected arguments in the instant motion. Two consistent themes in defendant's motion are that there was insufficient proof and there were inadequate instructions regarding

whether plaintiff sustained a "compensable injury." Defendant insists that its motion must be granted because there was no proof that plaintiff suffered a "compensable injury" for which she might make a workers' compensation claim and because the jury was not properly instructed as to what a "compensable injury" was under the law.

Regarding the instructions, the court instructed the jury that plaintiff must prove that she "incurred one or more absences which the defendant knew or had reason to know were due to work-related injuries for which she might file a workers compensation claim." Instruction No. 5. Admittedly, this does not use the term "compensable injury." But, the court's instruction is consistent with the Tenth Circuit's recent recitation of the elements of a retaliatory discharge claim as excerpted above. It is also consistent with *Ortega v. IBP, Inc.*, 255 Kan. 513, 874 P.2d 1188, 1191 (Kan.1994) where the Kansas Supreme Court stated: "[E]ven where the employee had not yet filed a workers compensation claim, an employer is prohibited from firing an employee who is absent from work due to a work-related injury and who might file a workers compensation claim." Indeed, defendant's proposed instructions and proposed verdict form do not explicitly employ the term "compensable injury" and defendant admits that plaintiff could prevail upon a retaliation claim if plaintiff did not actually have a "compensable injury" but was fired for attempting to assert one. Reply brief, p. 11. Therefore, the court rejects this argument against the jury instructions.

As mentioned, defendant also asserts that there was insufficient proof of a work-related injury for which plaintiff missed work and might file a workers' compensation claim. The evidence indicated that plaintiff had shoulder surgery for a work-related injury in 1994. There was also evidence that plaintiff had obtained maximum medical improvement from the surgery in December 1994. She had returned to full duty in the shipping department on November 1, 1994. Plaintiff filed and ultimately recovered upon a workers' compensation claim she made with regard to her shoulder injury.

There was additional testimony that in January 1995 and February 1995, plaintiff complained of neck, shoulder and back pain

to her departmental manager, Rocky Daniels. Plaintiff testified that she suffered a new injury during this time period. She said the pain was different. Mr. Daniels stated in a deposition that he thought he completed a new accident report in January 1995 for plaintiff. However, no such document was found. Plaintiff testified that she asked for a new report from Mr. Daniels and was told it would be done. Dr. Wendt, the surgeon who treated plaintiff, stated that neck pain generally would not be a problem with plaintiff's shoulder injury after full motion had returned following surgery, although he also said that such neck pain could be consistent with the shoulder injury. He further stated that plaintiff's back pain would not be related to her shoulder injury but could be a continuation of prior back problems.

Plaintiff testified that she had a stiff neck on February 3, 4, 5, 6, 7 and 10, 1995. Plaintiff missed work on all of those days except the 4th and 5th, which were not work days, and part of the 10th when plaintiff worked a half day. On February 7, 1995, plaintiff saw Dr. Wendt's associate, Dr. Wertzberger, for an appointment which plaintiff said was scheduled after she called the office on February 3rd. The notes from that visit indicate that plaintiff had a very stiff neck which she could hardly move. Dr. Wertzberger did not know why plaintiff's neck was stiff. X-rays were normal. Pain medication and muscle relaxers were prescribed. Plaintiff asked for and received light work restrictions from the doctor for the following day. The next day she asked for and received permission to return to full duty. She claimed she did this because she felt silent intimidation from her supervisors.

Plaintiff did not file a new workers' compensation claim on the basis of the neck and back pain, or amend the claim she was litigating at that time regarding the shoulder injury. Nor did she ask the company nurse to refer her to a doctor because of a work injury, as was apparently customary. Furthermore, the doctor's notes from the February 7th visit did not state that the neck stiffness was work-related.

■ Nevertheless, the court believes there was sufficient evidence in the record for a

reasonable jury to decide by a preponderance of the evidence which was clear and convincing that plaintiff had suffered a new work-related injury of which defendant had knowledge and for which she might file a future claim for workers' compensation benefits. Plaintiff did work which could easily produce neck and back injuries. She testified that she suffered a new injury—an injury different from her shoulder injury. The medical evidence and testimony did not refute this conclusion and provided some corroboration. Medication was prescribed and the neck and back pain was not linked to plaintiff's previous shoulder injury which supposedly had fully healed following surgery. Plaintiff testified that she informed her supervisor of the new injury and asked for a report to be completed.

Defendant contends that the jury would not have reached this decision had the court used defendant's proposed instruction 10 which gave an extended explanation of "injury" and other aspects of the Kansas Workers' Compensation Act.[1] The court disagrees. The issue was whether plaintiff was discharged because she suffered a work-related injury for which she might file a workers' compensation claim. The issue was not whether the injury itself satisfied the statutory definition of "injury" under the Workers' Compensation Act so that a claim might be successful. With the instruction proposed by defendant, a reasonable jury could have reached the conclusion upon the record in this case that plaintiff suffered a work-related injury of which defendant was aware and which plaintiff might use as the basis for a workers' compensation claim, even if the injury may not have satisfied the definition of an "injury" under the Act.

■ Defendant also argues that a new trial or judgment notwithstanding the verdict is justified because there was inadequate evidence that plaintiff's discharge was caused by the fact that she sustained a work-related injury for which she might file a future claim for benefits. In other words, defendant asserts that plaintiff did not prove an intent to retaliate caused her discharge.

In this case there was a good deal of evidence that defendant discouraged employees from claiming work-related injuries. There was testimony that departmental managers were abusive to employees, including plaintiff, when they complained of work-related injuries. There was evidence that the managers were reluctant or sometimes refused to file accident reports in response to employees who reported work-related injuries and that managers were sometimes reprimanded for sending employees to the company nurse. There was evidence that employees had to get permission to see the company nurse and that sometimes this was refused. There was also evidence that sometimes time lost because of work-related injuries was counted as personal leave time. Defendant was self-insured and offered rewards to distribution centers with low injury/loss time rates. Of course, defendant was aware that plaintiff previously had filed a claim for workers' compensation benefits.

From all of this evidence, a reasonable jury could conclude that defendant intended to retaliate against plaintiff for suffering a work-related injury which might lead to a workers' compensation claim by refusing to acknowledge that she had sustained a work-related injury and refusing to count her time off work as work-injury time as opposed to personal leave time.

The issue of whether this was the proximate cause of plaintiff's termination in June 1995 was one for the jury to decide. The court believes a reasonable factfinder could conclude that plaintiff's termination was caused by defendant's intentional actions to retaliate against plaintiff for sustaining an injury for which she might file a workers' compensation claim. Obviously, if plaintiff had not had personal leave time deducted when she was off work for a work-related injury in February 1995, then she would not have exhausted her leave and single days vacation time by June 7, 1995 and, therefore, would not have violated the absenteeism policy when she took that day off work. Plaintiff customarily used almost all of her leave time

---

1. "Personal injury" and "injury" are defined in the Act as "any lesion or change in the physical structure of the body, causing damage or harm thereto, so that it gives way under the stress of the worker's usual labor. It is not essential that such lesion or change be of such character as to present external or visible signs of its existence." K.S.A. 44–508(e).

as an employee. In this instance, a reasonable person could foresee that deducting personal leave for time lost because of a work-related injury could lead to a violation of the absenteeism policy and termination. Therefore, a reasonable jury could conclude not only that there was sufficient proof of a retaliatory motive and action, but also that plaintiff's discharge was a foreseeable result of the retaliation.

Defendant also argues that a new trial should be ordered because the court erred in allowing evidence of other employees' or former employees' complaints to be admitted when those employees did not claim to have been *discharged* by defendant in retaliation for filing a workers' compensation claim or suffering a work-related injury. The court does not believe the only relevant pattern and practice evidence was limited to evidence of other discharges or terminations. The evidence which was admitted was pertinent to plaintiff's claim that defendant mistreated employees who suffered work-related injuries. Therefore, it was admissible. See *Sanjuan v. IBP, Inc.,* 160 F.3d at 1297 (evidence of other employee's complaints admissible to prove motive or intent to mistreat employees following work-related injuries). However, even if the evidence should not have been admitted as a legal matter, the court does not believe it was so prejudicial to defendant that the result of this case would have been different had the court excluded the evidence of other employees' complaints. Consequently, a new trial is not warranted. *Sanjuan,* 160 F.3d at 1297 ("A new trial is appropriate only where the claimed error substantially and adversely affected the rights of a party.").

As part of the above argument defendant asserts that the evidence of other employees' complaints must have been prejudicial because there was insufficient evidence of embarrassment, humiliation and emotional distress to support a $30,000 award of damages. The court disagrees. The evidence in the record indicates that plaintiff felt badly after her termination. She had worked for defendant for 15 years. Plaintiff felt it was a better job than most other jobs available to her in the community. She had no plans of working anywhere else. She had great difficulty finding a new job. Additionally, the jury may have drawn some conclusion regarding plaintiff's emotional distress from the emotions plaintiff exhibited from the witness stand. While this evidence is not detailed, it was sufficient in our opinion to support the jury's verdict in this case. Cf., *Butcher v. City of McAlester,* 956 F.2d 973, 981 (10th Cir.1992) (verdict of $15,000 for mental anguish sustained upon a less than detailed record). Nor do we believe the award suggests that the jury was inflamed by prejudicial pattern and practice evidence. Defendant also has made a brief reference to an allegedly prejudicial question posed by plaintiff's counsel to defendant's human resources manager. The court is completely convinced that this fleeting bit of interrogation had no impact upon the jury's decision in this case.

Defendant's motion also objects to the court's handling of the jury's request to read back certain testimony. The court does not believe error was committed by granting the jury's request for a read back. At the time of the read back, defendant objected that the testimony requested by the jury was not relevant because it only concerned a claim which had been dismissed by the court. The court disagrees. The testimony was relevant to defendant's alleged practice of discouraging workers' compensation claims because the testimony discussed an employer's duty under the law after notice of an injury was given. In the instant motion, defendant asserts that its counsel did not have adequate notice of what testimony would be read to the jury. Counsel knew of the request made by the jury. Counsel could have requested that additional testimony be read or could have objected to the testimony that was read on specific grounds. This was not done. Counsel only made a general objection based on relevance which the court believes was unjustified. The court rejects defendant's objections to the read back.

Finally, we return to defendant's arguments against the court's instructions. We reject those arguments. The court believes the jury was given fair and adequate instructions of the governing law. We specifically reject defendant's claim that a burden-shifting instruction should have been giv-

en under the facts of this case. Although a burden-shifting analysis may be employed when courts review the evidence in this type of case, or perhaps when a jury considers a dual motivation argument (see *Fields v. New York State Office of Mental Retardation and Developmental Disabilities,* 115 F.3d 116 (2d Cir.1997)), it was not necessary under these circumstances where dual motivation was not argued and the jury was given the ultimate question of retaliation. Cf., *Murray v. City of Sapulpa,* 45 F.3d 1417, 1421 (10th Cir. 1995) (Title VII discrimination action).

## CONCLUSION

In conclusion, for the above-stated reasons, defendant's motion for a new trial and judgment notwithstanding the verdict shall be denied.

**IT IS SO ORDERED.**