**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUL 12 2000**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

JENNIE R. NEWELL,

      Plaintiff-Appellee,

v.

K-MART CORPORATION,

      Defendant-Appellant.

No. 99-3067
(D.C. No. 97-CV-2258-RDR)
(District of Kansas)

**ORDER AND JUDGMENT**[*]

Before **EBEL**, **KELLY**, and **ELLISON**[**], Circuit Judges.

      Plaintiff-Appellee Jennie R. Newell brought an action against her former

employer, Defendant-Appellant K-Mart Corporation ("K-Mart"), alleging that K-

Mart fired her in retaliation for exercising her rights under Kansas' workers'

compensation statute. The jury returned a verdict in favor of Newell. K-Mart

then filed a renewed motion for judgment as a matter of law and, alternatively, for

---

[*] This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. This court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

[**] The Honorable James O. Ellison, Senior District Judge, United States
District Court for the Northern District of Oklahoma, sitting by designation.

a new trial.  The district court denied K-Mart's motion, and K-Mart now appeals.

We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and REVERSE.

## BACKGROUND

Newell was employed at K-Mart's Lawrence, Kansas, distribution

warehouse from 1980 until June 7, 1995.  Most recently, Newell worked in the

shipping department, where she was typically responsible for loading and

unloading tractor trailers of merchandise.  Newell was terminated for allegedly

violating K-Mart's absenteeism policy.

As an employee with fifteen years' seniority, Newell was entitled to twenty

days of paid vacation each year.  Ten of these days could be taken as "single

days" of vacation, while the remaining ten had to be taken in five-day blocks.

Newell also received an additional 120 hours (fifteen days) of personal leave, 80

hours of which were paid and 40 of which were unpaid.  Under K-Mart's

absenteeism policy, an employee was to be terminated if he or she exceeded the

allotted days of vacation and paid and unpaid personal leave.

Newell took off June 7, 1995, and was informed upon returning to work the

next day that she had been terminated.  K-Mart told Newell that she had no single

days of vacation remaining and only insufficient personal time remaining.  As a

result, K-Mart informed her, she exceeded her available leave and was terminated.

Newell sued K-Mart, alleging, *inter alia*, that K-Mart had in fact terminated her in retaliation for sustaining an injury for which she could assert a claim under the Kansas Workers' Compensation Act, K.S.A. § 44-501 et seq.  See Newell v. K-Mart Corp., 35 F. Supp.2d 1312, 1314 (D. Kan. 1999).  K-Mart denied this allegation, contending that Newell was terminated because of her excessive absenteeism.  Specifically, Newell claimed that K-Mart had improperly docked her vacation time for days of work she missed due to an earlier work-related injury, and that caused her to have an inadequate number of vacation days remaining to cover her absence on July 7; thus, according to Newell, K-Mart had indirectly terminated her for potentially exercising her workers' compensation rights.

The jury agreed with Newell, awarding her "$15,000 in back pay and $30,000 for embarrassment, humiliation and emotional distress."  Newell, 35 F. Supp.2d at 1314.  The district court denied K-Mart's post-trial motion challenging the verdict.  See id. at 1316-18.

**DISCUSSION**

K-Mart appeals the denial of its post-trial motion for judgment as a matter of law pursuant to Fed. R. Civ. P. 50(b) and, alternatively, for a new trial pursuant to Fed. R. Civ. P. 59(a).[1]

K-Mart first claims that the jury's verdict in favor of Newell was not supported by the evidence and should therefore have been reversed as a matter of law.

> We consider de novo a district court's denial of a motion for judgment as a matter of law under Rule 50, using the same standard as the district court. We may find error in the denial of such a motion only if the evidence points but one way and is susceptible to no reasonable inferences supporting the party opposing the motion. We construe the evidence and inferences most favorably to the nonmoving party.

Vining v. Enterprise Fin. Group, Inc., 148 F.3d 1206, 1213 (10th Cir. 1998) (internal citations, alterations, and quotation omitted).

"Where a new trial motion asserts that the jury verdict is not supported by the evidence, the verdict must stand unless it is clearly, decidedly, or overwhelmingly against the weight of the evidence." Anaeme v. Diagnostek, Inc., 164 F.3d 1275, 1284 (10th Cir.), cert. denied, 120 S.Ct. 50, 145 L. Ed.2d 44

---

[1] This case apparently arose under the district court's diversity jurisdiction pursuant to 28 U.S.C. § 1332. Accordingly, we apply the substantive law of the forum state, Kansas. See Barrett v. Tallon, 30 F.3d 1296, 1300 (10th Cir. 1994).

- 4 -

(1999) (internal citation and quotation omitted). In conducting our review, we consider the evidence in the light most favorable to the prevailing party, remembering that "determining the weight to be given to the testimony, drawing inferences from the facts established, resolving conflicts in the evidence, and reaching ultimate conclusions of fact," are the exclusive functions of the jury. Thunder Basin Coal Co. v. Southwestern Pub. Serv. Co., 104 F.3d 1205, 1212 (10th Cir. 1997) (citation and quotation omitted).

Legal Standard

Under Kansas law, an employee asserting a claim of retaliatory discharge for exercising or potentially exercising rights under the workers' compensation statute "can recover by proving that the discharge was 'based on,' 'because of,' 'motivated by' or 'due to' the employer's intent to retaliate. Employees do not need to show that retaliation was the employer's sole motive or reason for the termination." Sanjuan v. IBP, Inc., 160 F.3d 1291, 1298 (10th Cir. 1998) (quoting Brown v. United Methodist Homes for the Aged, 815 P.2d 72 (Kan. 1991)) (additional citation omitted). Moreover, the Supreme Court of Kansas has declared that employers may not use a facially neutral absenteeism policy to disguise retaliatory discharge:

> Allowing an employer to discharge an employee for being absent or failing to call in an anticipated absence as the result of a work-related injury would allow an employer to indirectly fire an employee

for filing a workers' compensation claim, a practice contrary to the public policy of this state . . . .

Coleman v. Safeway Stores, Inc., 752 P.2d 645, 652 (Kan. 1988). Thus, although K-Mart maintained a facially neutral attendance policy that resulted in Newell's termination, Newell may nevertheless succeed on her retaliation claim if her termination was in fact based upon her sustaining an injury for which she could assert a workers' compensation claim.

The Supreme Court of Kansas has prescribed a particular method by which workers' compensation-retaliatory discharge claims must proceed:

> A party having the burden of proving a discharge from employment in retaliation for having filed a workers compensation claim must establish that claim by a preponderance of the evidence, but the evidence must be clear and convincing in nature. It is clear if it is certain, unambiguous, and plain to the understanding. It is convincing if it is reasonable and persuasive enough to cause the trier of facts to believe it.

Ortega v. IBP, Inc., 874 P.2d 1188, 1198 (Kan. 1994). Kansas has further defined the clear and convincing evidence requirement to

> mean[] that the witnesses to a fact must be found to be credible; the facts to which the witnesses testify must be distinctly remembered; the details in connection with the transaction must be narrated exactly and in order; the testimony must be clear, direct and weighty; and the witnesses must be lacking in confusion as to the facts at issue.

Modern Air Conditioning, Inc. v. Cinderella Homes, Inc., 596 P.2d 816, 824 (Kan. 1979).[2]

With these standards in mind, we turn to the evidence presented in the present case.

There was evidence presented at trial that Newell had sustained injuries implicating her rights under Kansas' workers' compensation statute. In February of 1994, Newell sustained a shoulder injury while sliding boxes of merchandise onto a pallet. She aggravated this injury in May of that year, ultimately requiring surgery in July and a two-month absence from work. Newell testified that she had some difficulty getting K-Mart to issue workers' compensation checks to her for this injury, and that she only received these checks upon retaining an attorney. Newell returned to work in October of 1994. She received a lump-sum payment from K-Mart for this injury in May of 1995.

In January of 1995, Newell sustained an injury to the middle of her shoulders. She reported the injury to her supervisor at the time, Rocky Daniels, and asked that he complete the appropriate paperwork. Daniels told her that he

---

[2] Modern Air Conditioning announced this definition in the context of civil fraud, but courts have applied it in the context of workers' compensation retaliation claims as well. See Chaparro v. IBP, Inc., Nos. 95-3078, 95-3098, 1996 WL 733771, at *5 (10th Cir. Dec. 24, 1996) (unpublished); Dougherty v. Venator Group Retail, 94 F. Supp.2d 1206, 1209 (D. Kan. 2000); McClurg v. GTECH Corp., 61 F. Supp.2d 1150, 1162 n.7 (D. Kan. 1999).

would fill out an accident report, but Newell never received a copy of the document. Apparently, no accident report documenting this incident was ever found.

During the first week of February, 1995, Newell was having neck pain in connection with her work. On Friday, February 3, Newell called in and complained to her supervisor at the time, Rocky Daniels, that she was having difficulty moving her neck and would not be able to come into work. However, this call came too late in the day to qualify as a call-in so she was considered a "no call-in" that day.[3] The following Monday, February 6, Newell called Daniels to report that she was still having difficulty moving her head and neck and would not be in to work, but again she was reported as a "no call-in." During this call, Newell reported to Daniels that she had made an appointment to see a doctor the next day. Newell went to see the doctor as scheduled on Tuesday, February 7th, but, because she had previously informed her supervisor of the appointment, she did not call to tell him she would not be at work that day. The doctor imposed work restrictions on Newell and gave her documentation of these restrictions to present to K-Mart. Newell gave this document to her supervisor upon returning to

---

[3] Newell testified that her first call to her supervisor, on Friday, February 3, was not until after the time (8:15 A.M.) by which employees were required to notify their supervisor if they were not going to come into work. As a result, she was (apparently legitimately) listed as "NCI," or "no call-in" for that day.

work. Thus, there was evidence that K-Mart was aware Newell had sustained work-related injuries that might be compensable as workers' compensation claims, and that her absences on February 6 and 7 were related to these injuries.

There was also evidence presented at trial describing some hostility among K-Mart supervisors toward employees' workers' compensation claims. Mr. Steven Rafferty, Newell's co-worker, testified that he had an ongoing disagreement with K-Mart concerning the use of personal leave time for his work-related injury. Mr. Don Nowling, a former employee at K-Mart's Lawrence, Kansas, facility, testified to his own difficult experience with supervisors regarding his work-related injury. Newell also testified at trial that she felt she had been intimidated by her supervisors after seeking work restrictions due to a work-related injury.

On the morning of June 7, 1995, Newell informed her supervisor, Gary Coffman, that she wished to take the next day off as a single day of vacation. There was no suggestion that this particular vacation request was linked in any way to a work-related injury. Newell asked Coffman to verify that she had an available single day of vacation remaining, and Coffman informed her "that he would check and get back with me." Newell testified that, although K-Mart's official policy was that employees were responsible for verifying their remaining vacation before taking time off, she had previously been advised by Martha

Engnehl to make these inquiries through her department manager. Newell testified that she had previously relied on her supervisors to verify her remaining vacation time and occasionally in the past she had been advised that she could not take requested time off because she did not have enough accrued vacation time available. Coffman never got back to Newell regarding the vacation on this occasion. In fact, Newell did not have sufficient vacation time available for this day off. As a result, and pursuant to K-Mart's standard policy, Newell was fired the next day for taking time off that exceeded her available single days of vacation and available personal time. Martha Engnehl testified that Newell would have had available time to take June 8 off if Newell had not been charged for her absences back on February 6 and 7.

The problem is that Newell was discharged for her unauthorized vacation on June 8, and that particular day off was not caused by, or related to, any work-related injury. Thus, in order to succeed on her claim, Newell needed to prove either that her supervisor intended wrongfully to record her February 6 and 7 absences in order to eventually terminate her some six months later, or that her supervisor intended to mislead her on June 7 as to her remaining vacation available for June 8 for the purpose of retaliating against her for her work-related injuries that occurred back in February. Newell did not, however, introduce any evidence to this effect, let alone any "clear and convincing evidence" as required

by Kansas law. Rather, the most that appears from the record, drawing all inferences in favor of Newell, is that her supervisors may have been negligent or careless when dealing with vacation time and that they perhaps mistakenly charged her for the February absences. There was simply no evidence introduced at trial that Newell's supervisors intended to achieve her termination through these errors or misrepresentations or that her termination as of June 8 was "based on," "because of," "motivated by," or "due to" K-Mart's intent to retaliate for her earlier work-related injuries or claims.

Kansas law requires that Newell offer clear and convincing evidence of intent, and Newell failed to meet this burden. On the evidence presented in this case, a jury would have to speculate as to the motives of Newell's supervisors. The evidence presented as to whether K-Mart intended to retaliate against Newell for her work-related injuries was not "certain, unambiguous, and plain to the understanding." Ortega, 874 P.2d at 1198. To the contrary, the evidence produced neither compelled nor suggested the conclusion that Newell's supervisors intended to use her absences as a smokescreen for retaliation. Thus, we conclude that Newell failed to meet the heightened evidentiary burden Kansas law imposes upon plaintiffs alleging workers' compensation retaliation.[4]

---

[4] Because we agree with Appellant's contention that the verdict was not supported by the evidence, we need not address Appellant's additional arguments regarding the sufficiency of Newell's alleged injury and certain evidentiary

## CONCLUSION

We find that the district court erred in denying Appellant's post-trial motion for judgment as a matter of law or, in the alternative, for a new trial. Accordingly, the judgment of the district court is REVERSED, and this case is REMANDED for proceedings not inconsistent with this order and judgment.

ENTERED FOR THE COURT

David M. Ebel
Circuit Judge

---

rulings by the district court.