No. 29,518.

The Beeler & Campbell Supply Company, *Appellant,* v. Edward T. Riling, C. J. Topping, T. D. Funk and C. M. Harbaugh, *Appellees.*

(296 Pac. 365.)

500

Opinion filed March 7, 1931.

*Chester Stevens*, of Independence, for the appellant.

*Edward T. Riling* and *John J. Riling*, both of Lawrence, for the appellees.

The opinion of the court was delivered by

DAWSON, J.: This was an action against certain persons who had been officers and agents of a corporation now defunct to recover damages for alleged fraud in the sale of certain of that corporation's assets.

The principal facts were these: Prior to December 31, 1927, there was a corporation, the Linwood Oil and Gas Development Company, which had its headquarters in Lawrence. It may be inferred that its managing officials had decided that it should go out of business in 1927. They began to dispose of its assets. On June 23, 1927, one Edward Beeler, an officer of the plaintiff company, engaged in buying and selling oil and gas well supplies, effected a contract with the Linwood Oil and Gas Development Company for the purchase of certain of its assets for the stipulated price of $5,000. The defendants, Riling as president and Topping as secretary-treasurer, acted for the Linwood company in that transaction. Defendant Funk, a director, was present when the contract of sale was made, and defendant Harbaugh, a stockholder, was cognizant of it.

The property included in this contract of purchase and sale consisted of various amounts of 4-, 5- and 6¼-inch pipe, two gas wells, two piles of casing, and an unknown amount of 2-inch pipe which was estimated to be 4,500 feet. It was also agreed that if the amount of 2-inch pipe was in excess of 4,500 feet the plaintiff company would pay 5 cents per foot therefor in addition to the stipulated price of $5,000, and it was likewise agreed that if the amount of 2-inch pipe fell below 4,500 feet the purchase price should be reduced 5 cents per foot for the amount of the shortage. It was also

agreed that Harbaugh, one of these defendants, should measure the 2-inch pipe, and that the exact purchase price should be calculated upon his measurements.

Within a day or two Harbaugh went to the places where the 2-inch pipe was kept and found that all of the 2-inch pipe had been disposed of to another purchaser except 1,208 feet. He therefore reported that amount at the headquarters of the Linwood company. In some undisclosed way a gross mistake in calculating the amount to be paid for the 2-inch pipe was made. Instead of making a deduction of 5 cents per foot for the shortage (4,500 less 1,208 equals 3,292 feet), a computation was made on the basis of an excess of several thousand feet, and a bill for the purchase price with that erroneous excess included was forwarded to the plaintiff company and paid.

Later this discrepancy was discovered and called to the attention of the Linwood company. The matter became the subject of a good deal of correspondence between the parties. The defendant company repeatedly stated its readiness to make reparation, but insisted on an itemized statement showing upon what basis the plaintiff company fixed the amount of its demand. Indicative of this correspondence were the following letters which passed between the parties:

"DECEMBER 12, 1927.

*"Beeler & Campbell Supply Co., Independence, Kan.:*

"In reply to your letter of December 2, 1927, wish to ask you if you would be kind enough to let us have an itemized statement of the items comprising the sum of $865 you claim due you from the Linwood company. We desire to settle this matter at as early a date as possible, but wish you would send us this statement so that we can tell what this money is for.

. . . . . . . . . . . . .

"EDW. T. RILING."

That letter brought the following response:

"INDEPENDENCE, KAN., December 14, 1927.

*"Linwood Oil and Gas Co., Lawrence, Kan.:*

"In reply to your recent letter would say that the amount due us on the meters and regulators sold to the Bonner Springs Gas Company is $225, and pipe $635.90, plus interest from June 30 to December 15, $27.60, making a total due us of $888.50. Your check in this amount or the material will settle this account if done immediately.       BEELER & CAMPBELL SUPPLY CO.,

"By ELMER BEELER."

The Linwood company took the position that it had not sold

meters and regulators to the plaintiff company, and as no mention of these chattels was made in the memorandum contract of sale, it rejected that item and also rejected the item demanded for interest; but on January 21, 1928, it sent a check to plaintiff for $635.90, to repay the amount of overcharge on the 2-inch pipe (12,718 feet at 5 cents per foot). Accompanying the check was this letter of transmittal:

"*Mr. Elmer Beeler, Independence, Kan.:*    "JANUARY 21, 1928.

"At the direction of the Linwood Oil and Gas Company, I am inclosing you check for the sum of six hundred and thirty-five ($635.90) dollars and ninety cents, the same being in full of all indebtedness between the company and yourself.

. . . . . . . . . . . . . . . . .

"If the check of $635.90 is not in full settlement of all matters and differences between you and the company, please return the check without delay. If you accept it, we will consider the matter as settled.    EDW. T. RILING."

Defendant kept the check for a month, but eventually returned it, saying: "This is to advise you that we will not accept your proposed settlement."

Meantime, on December 31, 1927, the charter of the Linwood company was canceled by the state charter board for nonpayment of its annual corporation fee.

On February 18, 1929, this action was begun against these defendants, Riling, Topping, Funk and Harbaugh, reciting the facts of the transaction and alleging that defendants, as officers of the defendant corporation, had purposely defrauded the plaintiff—

"That the defendants, as officers, stockholders and directors of the Linwood company, and individually, fraudulently and with the intent and purpose to deceive the plaintiff and to cheat and defraud it to its damage and injury, falsely represented that there were 13,926 feet of 2-inch pipe, when in fact there were only 1,208 feet thereof, and likewise fraudulently and with the intent to deceive and cheat the plaintiff, falsely represented that the three meters and regulators constituted a part of the property sold. That all of the representations were believed and relied upon by the plaintiff, and plaintiff paid said draft without any knowledge whatsoever of the shortage in said material, and of the false and fraudulent representations made concerning the same.

"That the charter of the Linwood company was forfeited by the charter board of the state of Kansas on December 30, 1927, and plaintiff prayed judgment against the defendants for the sum of $1,496.80 with interest thereon at the rate of 6 per cent per annum from the 2d day of July, 1927, the date on which said draft was paid."

The amount prayed for was based upon the value of certain meters and regulators which plaintiff claimed to have been included in the property purchased, and the fair value of the 2-inch pipe which plaintiff paid for but did not receive and which it had contracted to resell at 10 cents per foot.

Defendants answered with a general denial; denied that they had engaged in any personal transactions with the plaintiff; denied making any false or fraudulent statements as alleged, individually, personally, or as agents of the Linwood company; denied any indebtedness to plaintiff; and alleged that whatever dealings plaintiff had were with the Linwood company and not with defendants personally or with any of them.

The cause was tried by the court without a jury, which made a general finding in favor of defendants; also many special findings in accord with what we have said above. Space must be given to some of these:

Findings 2, 3, 4, 5 and 6, abridged, were to the effect that defendants Riling and Topping were officers, directors and stockholders of the Linwood company, Funk was a director and stockholder, and Harbaugh a stockholder; and that the memorandum contract evidencing the sale of the chattels was signed for the plaintiff by Beeler and for the Linwood Oil and Gas Company by Topping as secretary-treasurer.

"7. . . . No meters or regulators were sold or intended to be sold by the Linwood company to the plaintiff."

Finding No. 10 recites that Harbaugh measured the 2-inch pipe according to agreement, and—

"That said Harbaugh wrote upon a piece of paper, a memorandum showing that there was only 1,208 feet of 2-inch pipe for the plaintiff, and turned said slip of paper into the office of Edw. T. Riling, at Lawrence, Kan., said office also being the office of the Linwood company. That said Harbaugh also orally informed some one in said office that there was only 1,208 feet of 2-inch pipe for the plaintiff.

.   .   .   .   .   .   .   .   .   .   .   .   .

"14. That in determining the amount due from the plaintiff to the Linwood company for the sale of said property, a mistake was made in the quantity of 2-inch pipe. Just how or why this mistake was made, it seems cannot be clearly or definitely explained. Whether the slip of paper containing the number of feet of 2-inch pipe, which Mr. Harbaugh left at the office of Edw. T. Riling, became lost and another paper substituted, or whether the figures on said slip of paper became changed, or whether some person in

Mr. Riling's office gave them the number of feet of 2-inch pipe put in the bill of sale, Mr. Riling or Mr. Topping are unable to remember at the time of the trial. But they both admit there was an unintentional mistake made in the quantity of 2-inch pipe, the amount put in the bill of sale being too large by 12,718 feet.

"15. The defendants, T. D. Funk and C. M. Harbaugh, had nothing to do with computing the balance due the Linwood company from the plaintiff and had nothing to do with the drawing of said draft for the balance of $4,-471.30, were not present at the time said computation was made or said draft drawn or said bill of sale executed, and did not know anything about it until after said draft had been paid and said bill of sale had been delivered to the plaintiff.

"16. In computing the balance due the Linwood company from the plaintiff for the sale of said property, the defendants, Edw. T. Riling or C. J. Topping, did not knowingly, willfully or fraudulently put into said bill of sale and computation the additional number of feet of 2-inch pipe, and did not do so with any intent on their part to cheat, wrong or defraud the plaintiff out of any money or property.

⋅  ⋅  ⋅  ⋅  ⋅  ⋅  ⋅  ⋅  ⋅  ⋅  ⋅  ⋅  ⋅  ⋅  ⋅  ⋅

"22. At the time of the transactions set forth in the petition of the plaintiff, the defendants were officers, directors and stockholders of the Linwood Oil and Gas Developing Company, a corporation, as stated in finding No. 1 above, and in making said sale of the property of said Linwood company, said defendants were acting for and on behalf of said Linwood company as such officers, directors and stockholders, and not as individuals, and they are not liable personally to the plaintiff.

⋅  ⋅  ⋅  ⋅  ⋅  ⋅  ⋅  ⋅  ⋅  ⋅  ⋅  ⋅  ⋅  ⋅  ⋅  ⋅

"CONCLUSIONS OF LAW.

"1. The plaintiff is not entitled to recover judgment in its favor against any or either of the defendants in this action.

"2. Judgment should be rendered against the plaintiff and in favor of the defendants, and each of them, for their costs in this action."

Plaintiff's motions to set aside these findings and to substitute others and for a new trial were overruled, and judgment was entered for defendants.

Plaintiff's appeal is predicated chiefly on the theory that since the charter of the Linwood company had been forfeited after the cause of action arose "there was no one to sue except the defendants who actively participated in the perpetration of the fraud on the plaintiff."

As a legal conclusion that contention is unsound. When a corporation expires by the lapse or forfeiture of its charter the persons constituting the membership of its last board of directors be-

come statutory trustees *ex officio* of the defunct corporation and of its property, and are charged with the duty of winding up the affairs. They may sue and be sued as trustees of the defunct corporation. (R. S. 17-808; *Kansas Wheat Growers Ass'n v. Markley,* 132 Kan. 156, 294 Pac. 885.) Such *ex officio* trustees have not, *ipso facto,* any personal responsibility for the debts, torts or delicts of the defunct corporation. (*Bank v. Reed,* 108 Kan. 176, 178, 194 Pac. 638; 195 Pac. 599.) But, on the other hand, it is quite true that officers or agents of a corporation, whether defunct or not, may be personally liable for tortious acts of the corporation in which they have willfully participated. (*Cameron v. K.-C. Com. Co.,* 22 Mont. 312, 74 A. S. R. 602; *M. E. R. Co. v. Kneeland et al.,* 120 N. Y. 134, 8 L. R. A. 253, and Note; 17 A. S. R. 619, and Note; *Hoffman v. Toft,* 70 Ore. 488, 52 L. R. A. n. s., 944; 7 R. C. L. 504-510; 14a C. J. 175-176; id. 181 *et seq.;* Notes in 28 L. R. A. 433 *et seq.;* 25 L. R. A., n. s., 343 *et seq.;* 39 L. R. A., n. s. 901-903.)

These four defendants were not sued in their capacity as *ex officio* trustees of the defunct corporation. Indeed, it is not shown that they were directors of the company at the time its charter was forfeited, nor does it appear in the record who did constitute the entire personnel of the board of directors at the time of its dissolution. But this matter is only significant, however, to make it clear that these defendants were not sued in their official capacity, but personally and individually as wrongdoers alleged to have participated in a fraud practiced upon plaintiff by the Linwood company.

There was no evidence which even remotely hinted that any act or omission of defendants Funk and Harbaugh contributed to the overcharge which is the basis of plaintiff's claim of liability against them.

It is contended that Riling and Topping were personally liable for the overcharge because they were respectively president and secretary-treasurer of the corporation at the time of the transaction, and the overcharge could not have happened except through some falsified or erroneous computation of the amount due for 2-inch pipe for which they were responsible whether they or either of them made this computation or not, or even if made by some subordinate employee of the Linwood company under their supervision. This would carry the idea of individual responsibility of corporate officers for the tortious acts of their principal further than it has yet been declared. In 7 R. C. L. 504 it is said:

"An agent is responsible for torts committed in his principal's business only when they result from his own misfeasance or malfeasance and not when they consist of mere acts of nonfeasance; and this rule applies in the main to the officers and agents of corporations, though they can act only through their officers and agents, and for acts of nonfeasance merely they cannot be held liable to third persons."

See, also, Notes in 22 A. S. R. 508, 512-514; 48 A. S. R. 913, 922, *et seq.*

Counsel for plaintiff cites many cases which hold that a person is liable for making false representations, whether those are made willfully or by negligently assuming their truth, where another person having a right to rely thereon does so to his loss or prejudice. The soundness of that rule of law is scarcely debatable, but its only application to the facts disclosed by this record would be to declare that the Linwood company—and on its expiration its *ex officio* trustees—would be liable to plaintiff for the misrepresentation touching the amount of pipe and the consequent excess inhering in the draft which plaintiff paid. Typical of many cases cited by appellant in support of this rule is *Pellette v. Mann*, 116 Kan. 16, 225 Pac. 1067, where a dealer in motor vehicles who sold an automobile represented it to be the latest model, believing it to be such although it was in fact a model of the previous year, was held liable to the purchaser for the misrepresentation. The opinion in that case cites a number of earlier Kansas cases to the same effect, but neither that case nor those cited in the opinion intimate that an agent or employee of the dealer could have been held personally liable under such circumstances.

Under the findings of fact this court can discern no legal basis for subjecting any of these four defendants to personal liability in favor of plaintiff.

The other matters urged upon our attention have been carefully considered, but they do not warrant further discussion.

The judgment is affirmed.