(13 P.3d 17)
No. 82,662

LARRY L. REBARCHEK, *Appellant,* v. FARMERS COOPERATIVE ELEVATOR AND MERCANTILE ASSOCIATION OF DIGHTON, KANSAS, and FLOYD G. BARBER, *Appellees.*

Opinion filed November 3, 2000.

*John L. Carmichael*, of Wilson, Lee and Gurney, of Wichita, for appellant.

*Ward Loyd*, of Loyd & Maudlin Law Offices, LLC, of Garden City, and *Craig D. Kershner*, of Dighton, for appellees.

Before BRAZIL, C.J., BEIER, J. and J. STEPHEN NYSWONGER, District Judge, assigned.

BEIER, J.: Plaintiff-appellant Larry L. Rebarchek appeals the district court's decision to grant summary judgment in favor of defendants-appellees Farmers Cooperative Elevator and Mercantile Association of Dighton, Kansas (Farmers) and Floyd G. Barber. Because we reverse and remand for trial on Rebarchek's claim of retaliatory discharge for the filing of a workers compensation claim, we must also address issues regarding the statute of limitations, potential supervisor liability, and punitive and emotional distress damages. The remand makes Rebarchek's remaining issue regarding the use of previous testimony moot.

The controlling facts are these: Rebarchek began his employment with Farmers, a Kansas Corporation, in 1979 and eventually became branch manager of Farmers' Shields facility. Rebarchek's

job was to receive grain at harvest time and to maintain the quality of stored grain. Among his duties in maintaining the grain was checking for "hot spots." When hot spots were detected, Rebarchek was supposed to ensure that the grain was turned and blended to keep it from becoming sour, musty, or burned. Untreated hot spots cause grain to lose value because it becomes overheated, burned, and discolored. According to Rebarchek, he delegated his responsibility for reading the temperatures of the grain to his subordinate, Robert Mudd.

In January 1994, Rebarchek injured his back. Later, he claimed that the injury was work-related and filed a workers compensation claim. He notified Farmers of the injury in November 1994 and filed an application for a workers compensation hearing the following month.

On November 16, 1994, Rebarchek told Farmers' secretary that he reinjured his back that day while placing a tarp on a customer's truck. The following day, Barber, the general manager of Farmers, commented on Rebarchek's injury while Rebarchek was clocking out. A couple of days later, Barber told Rebarchek that he could no longer drive the company pickup truck. Barber said he did not want Rebarchek to reinjure his back by operating the truck's clutch.

On November 21, 1994, Barber reassigned Rebarchek to work at the Alamota facility. Rebarchek considered this a demotion. That day, Rebarchek's attorney sent a letter to Barber, alleging that the reassignment was retaliatory and demanding that Rebarchek be permitted to keep his position and duties at the Shields facility. Barber admits that he was angry when he received the letter, but he permitted Rebarchek to return to Shields.

Barber also admits that he followed Rebarchek home from work on one occasion in this time period. Rebarchek testified at his deposition that, at his home, Barber told him he was "tired of getting nasty letters" from Rebarchek's attorney and accused him of shipping out "bad grain."

Farmers had first noticed problems with the condition of the grain at the Shields facility in late September 1994. Barber talked to Rebarchek about the bad grain, and Rebarchek assured him that Farmers had simply run through a pocket of bad wheat. From

September 1994 to February 1995, the temperatures of the grain apparently were rarely tracked. Then, in February 1995, Rebarchek found hot corn and discovered the temperatures had not been read as they should have. Rebarchek and Mudd received written reprimands concerning the damaged grain on March 21, 1995.

Within a few days after his reprimand, Rebarchek underwent back surgery. On April 17, 1995, his physician released him to work on light duty. Rebarchek's temporary work restrictions included prohibitions on lifting more than 40 pounds, bending or twisting of his back more than halfway, and ladder climbing.

Farmers started receiving settlements from corn sales in April 1995, which confirmed the specific magnitude of its losses associated with the hot spots in the Shields facility grain. Farmers fired Rebarchek and Mudd on April 24, 1995, one week after Rebarchek was released to return to work on light duty.

Rebarchek filed suit in both state and federal courts. In his petition in this action, he alleged that Farmers and Barber discharged him in retaliation for filing a workers compensation claim. He also alleged that the defendants' retaliatory discharge was "willful, intentional, malicious, and done with the intent and purpose to damage the plaintiff." The court subsequently dismissed the action against Barber in his capacity as a representative of Farmers but permitted it to continue against Barber in his individual capacity.

The district court granted defendants' motion for summary judgment, finding that Rebarchek failed to show a correlation between the time of filing the workers compensation claim and his discharge 7 months later and that he failed to show a satisfactory work performance. Given its ruling on the summary judgment motion, the district court also denied Rebarchek's motion to amend his pleadings to add a punitive damages claim without reaching the merits of the motion.

### Summary Judgment

The standard of review on appeals from summary judgment rulings is well established:

"Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that

there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. . . . On appeal, we apply the same rules and where we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied." *Bergstrom v. Noah,* 266 Kan. 847, 871-72, 974 P.2d 531 (1999).

The plaintiff must prove a claim for retaliatory discharge by a preponderance of the evidence, but the evidence must be clear and convincing in nature. *Ortega v. IBP, Inc.,* 255 Kan. 513, 528, 874 P.2d 1188 (1994).

In *SanJuan v. IBP, Inc.,* 160 F.3d 1291, 1298 (10th Cir. 1998), the United States Court of Appeals for the Tenth Circuit laid out the elements of a prima facie claim for retaliatory discharge for filing a workers compensation claim: (1) The plaintiff filed a claim for workers compensation benefits or sustained an injury for which he or she might assert a future claim for such benefits; (2) the employer had knowledge of the plaintiff's workers compensation claim injury; (3) the employer terminated the plaintiff's employment; and (4) a causal connection existed between the protected activity or injury and the termination.

Our Supreme Court has adopted a burden-shifting approach to analyze cases involving retaliatory discharge based on discrimination. We hold that the same analysis should be applied in workers compensation retaliatory discharge cases.

"The burden of proof . . . is on the complainant to prove by a preponderance of the evidence that the respondent is guilty of a discriminatory practice. Initially, the complainant must present a prima facie case of discrimination. Then the burden of going forward with the evidence shifts to the respondent and this burden may be discharged by evidence of a legitimate, nondiscriminatory reason for respondent's conduct. Once the respondent discharges this obligation, the complainant must continue with the burden of proving by a preponderance of the evidence that the reasons offered by respondent were merely a pretext for discrimination." *Woods v. Midwest Conveyor Co.,* 231 Kan. 763, 767-68, 648 P.2d 234 (1982).

Judge Earl E. O'Connor of the United States District Court for the District of Kansas has concluded that Kansas would utilize the burden-shifting analysis in workers compensation discharge cases.

*Robinson v. Wilson Concrete Co.*, 913 F. Supp. 1476, 1483 (D. Kan. 1996). The parties wisely agree that this analysis should be applied here, and we hold that it does.

In this case, there is no dispute that Rebarchek has come forward with sufficient evidence on the first three elements of a prima facie case. The district court found that he lacked such evidence on the fourth element, a causal connection between his workers compensation claim and his discharge, relying in large part on the length of time that passed between his November 1994 notice to Farmers of his workers compensation claim and his late April 1995 discharge.

This court has noted the persuasive force of close temporal proximity between a discharge and the filing of a workers compensation claim:

> " 'Ordinarily the prima facie case must, in the nature of things, be shown by circumstantial evidence, since the employer is not apt to announce retaliation as his motive. Proximity in time between the claim and the firing is a typical beginning-point, coupled with evidence of satisfactory work performance and supervisory evaluations.' " *Marinhagen v. Boster, Inc.*, 17 Kan. App. 2d 532, 540, 840 P.2d 534 (1992) (quoting 2A Larson's Workmen's Compensation Law § 68.36[c][1992]).

Although our Supreme Court has not specifically addressed the issue of what constitutes an acceptable period of time between the claim and the discharge, the federal courts have done so. In *Nguyen v. IBP, Inc.*, 905 F. Supp 1471, 1482 (D. Kan. 1995), the court found that 5 months may be too remote. See also *Spradley v. Custom Campers, Inc.*, 68 F. Supp. 2d 1225, 1235 (D. Kan. 1999) (10-month span between filing of a workers compensation claim and termination insufficient to establish causal connection); *Conner v. Schnuck Markets, Inc.*, 121 F.3d 1390, 1395 (10th Cir. 1997) (absent additional evidence, 4-month span between protected activity and alleged retaliation insufficient for prima facie case); *Filipovic v. K & R Exp. Systems, Inc.*, 176 F.3d 390, 399 (7th Cir. 1999) (4-month span between filing of charges with EEOC and termination a substantial lapse of time; lapse constituted counter-evidence of any causal connection).

If Rebarchek were relying only on temporal proximity between his notice of his workers compensation claim to Farmers and his discharge, we would agree with the district court that his claim for retaliatory discharge must fail as a matter of law. However, a plaintiff in his position can avoid summary judgment by showing a pattern of retaliatory conduct stretching from the filing of a workers compensation claim to termination. See *Marx v. Schnuck Markets, Inc.*, 76 F.3d 324, 329 (10th Cir. 1996).

Rebarchek mustered evidence that Barber was angry and that he followed him home from work one evening after the filing of the workers compensation claim. Barber also assigned Rebarchek to the Alamota facility, which Rebarchek considered to be a demotion, until Rebarchek's attorney complained. Barber prevented Rebarchek from driving the company pickup truck previously assigned to him. A fellow Farmers employee testified that Barber said he was angry with Rebarchek for refusing to accept an offer of money to be paid "under the table" in place of pursuit of the workers compensation claim. Rebarchek has also established that certain employees with similar or even more serious performance issues were not terminated. Rebarchek was fired within 1 week of his post-surgery release to light duty. The surgery could be characterized as a significant milestone in terms of Rebarchek's workers compensation benefits.

We believe Rebarchek assembled enough bits and pieces of circumstantial evidence to raise a genuine issue of material fact regarding a causal connection between his workers compensation claim and his termination.

Once Rebarchek escapes summary judgment on his prima facie case, then the burden shifts to Farmers to present a legitimate, nondiscriminatory reason for Rebarchek's termination. See *Woods*, 231 Kan. at 767-68. Farmers satisfied this requirement by pointing to the quantity of grain lost, allegedly because of Rebarchek's failure to perform.

The burden then shifts back to Rebarchek to show that Farmers' stated reason was merely a pretext. See *Woods*, 231 Kan. at 767-68. On this point, Rebarchek reminds us that defendants were well aware of the nature of the loss and the financial consequences

thereof at the time the written reprimand was given to him and Mudd. This is correct. Although it was not until April 1995 that Farmers' specific monetary loss was calculated, Barber had accumulated enough information about the loss to have an estimate of its magnitude before he reprimanded Rebarchek and Mudd. In addition, as noted above with reference to the causation element of Rebarchek's prima facie case, other employees with similar problems were not terminated. Farmers takes issue with just how similar the other employees' problems and their consequences were, but this argument merely highlights the genuine issue of material fact on the existence of pretext. Compare *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147 L. Ed. 2d 105, 120 S. Ct. 2097 (2000) (Age Discrimination in Employment Act of 1967 case; jury may consider evidence supporting prima facie case in evaluating pretext).

We find that Rebarchek is entitled to test his case before a jury, and we reverse the district court's ruling on summary judgment and remand to give him that opportunity.

### Statute of Limitations

In addition to its other rulings, the district court found that the statute of limitations set out in K.S.A. 60-513(a)(4) barred Rebarchek from seeking damages for any of defendants' actions that preceded April 22, 1995, *i.e.*, 2 years before this state court action was filed. This would eliminate, among other things, Rebarchek's ability to seek damages for his temporary demotion in November 1994, which, he admits, are minimal.

We have de novo review of statute of limitations issues. See *Brown v. State*, 261 Kan. 6, 8, 927 P.2d 938 (1996).

Our Supreme Court has recognized that, in the context of discriminatory acts covered by the Kansas Acts Against Discrimination, K.S.A. 44-1001 *et seq.*, events predating the period of limitations may provide a basis for recovery because they were part of a continuing pattern of discrimination. Evidence of such events also may be admissible to prove that the ultimate termination sued upon was motivated by unlawful discrimination. See *Woods*, 231 Kan. at 765.

The same analysis applies with equal force to a common-law action for retaliatory discharge for filing a workers compensation claim. Rebarchek has come forward with adequate evidence to proceed to trial on the theory that defendants' actions constituted a continuing pattern of discrimination, and the jury may further consider the evidence of events predating the limitations period for whatever weight it elects to afford it on the issue of discriminatory intent.

### Potential Supervisor Liability

Rebarchek also argues on appeal that Barber, in his individual capacity, should be jointly and severally liable with Farmers for any damages arising from Rebarchek's wrongful termination. This argument raises a question of law reviewable de novo. See *Wilkinson v. Shoney's, Inc.*, 265 Kan. 141, 146, 958 P.2d 1157 (1998).

Our prior decision in *Murphy v. City of Topeka*, 6 Kan. App. 2d 488, 630 P.2d 186 (1981), is the starting point of our analysis. In *Murphy*, a public employee sued his employer and three individual supervisors, alleging that he was fired when he refused the supervisors' demands that he withdraw his workers compensation claim. The panel first noted that the three supervisors were accused of willful and wanton misconduct and of acting in abuse of their authority, *i.e.*, acting in a legally unauthorized manner that could defeat any governmental immunity defense. It then gave its imprimatur to a tort cause of action for retaliatory discharge based on the filing of a workers compensation claim and held, without further explanation, that the plaintiff could maintain such an action against the three supervisors in their individual capacities. 6 Kan. App. 2d at 494-97.

The Kansas Supreme Court has never considered a case of potential supervisor or individual employee liability for this intentional tort since *Murphy*. We have published only two decisions in cases where individuals were sued in addition to the entity employer.

In the first of those cases, *Marinhagen*, 17 Kan. App. 2d 532, the husband and wife plaintiffs sued two individuals along with their former corporate employer, alleging that both spouses had

been terminated because of the wife's pursuit of workers compensation benefits. Although it was not our principal holding, we affirmed the district court's decision to grant summary judgment in favor of one of the individual defendants who was not alleged to have done the actual firing or to have had any role beyond the provision of certain true information leading to it. 17 Kan. App. 2d at 542. Thus, *Marinhagen* added little to the law governing individual supervisor liability for retaliatory discharge based on workers compensation claims. Its point—that in order to be exposed to suit, a supervisor must have been more than peripherally involved in the discharge at issue—had already been implicit in the *Murphy* decision. It also was consistent with Kansas law limiting the individual liability of corporate agents, officers, or directors to situations in which they were personally involved in the alleged wrongdoing. See, *e.g.*, *Kerns v. G.A.C. Inc.*, 255 Kan. 264, 272, 875 P.2d 949 (1994); *Beeler v. Campbell Supply Co. v. Riling*, 132 Kan. 499, 504-06, 296 Pac. 365 (1931); see also *Wempe v. Sunrise Medical HHG, Inc.*, 61 F. Supp. 2d 1165, 1176 (D. Kan. 1999) (under Kansas law, director or officer of corporation individually liable for torts he committed or in which he participated).

Our second case in which a supervisor was a named defendant along with the employer was decided earlier this year. That case, *Riddle v. Wal-Mart Stores, Inc.*, 27 Kan. App. 2d 79, 998 P.2d 114 (2000), focused almost exclusively on the applicability and breadth of the after-acquired evidence doctrine in workers compensation retaliatory discharge cases. 27 Kan. App. 2d at 80-88. The district court had granted summary judgment to the defendants on the plaintiff's retaliatory discharge and defamation claims, and that judgment was reversed with no discussion of the contours of the named supervisor's potential individual liability for either tort. 27 Kan. App. 2d at 80-81.

Rebarchek urges us to hold that a supervisor's liability for a workers compensation retaliatory discharge is like a supervisor's liability for any other intentional tort he or she commits in a work situation. In his view, regardless of whether a supervisor, for example, commits an assault against a subordinate or unlawfully terminates a subordinate, the supervisor should be directly liable as an individ-

ual because the supervisor committed the tort. See *Sieben v. Sieben*, 231 Kan. 372, 377-79, 646 P.2d 1036 (1982). Moreover, according to Rebarchek, provided the supervisor was acting within the scope of his or her authority or employment at the time of the termination, the employer also should be liable under the doctrine of respondeat superior. See 231 Kan. at 377-79. Finally, Rebarchek argues, the direct liability of the supervisor and the indirect liability of the employer should be joint and several. See *York v. InTrust Bank, N.A.*, 265 Kan. 271, 311-14, 962 P.2d 405 (1998) (common-law rule is joint and several liability for compensatory damages for defendants in intentional tort actions; no joint and several liability for punitive damages); *Sieben*, 231 Kan. at 377-79 (apportionment not allowed; individuals and company jointly and severally liable for total damages from battery).

For his part, Barber responds that the employment relationship or contract existed only between Farmers and Rebarchek, and he cannot be held individually responsible for any breach by Farmers. Barber also invokes the doctrines of assumption of the risk and injury by a fellow servant and analogizes to the statute prohibiting liability on the part of members or managers of limited liability companies. See K.S.A. 17-7631. We agree with Rebarchek that these last three arguments are completely ineffectual. Both assumption of the risk and injury by a fellow servant generally apply in negligence cases rather than intentional tort cases, and the Kansas Limited Liability Company Act explicitly distinguishes between limited liability companies and corporations such as Farmers. See K.S.A. 17-7603(b).

There is, however, some merit in Barber's initial point about the nature of the employment relationship and the identity of the parties to it. Although it is always true that an entity employer and its discharged employee must have been parties to the former employment relationship, it is not necessarily true that the supervisor who actually discharged the employee was also a party to that relationship. We believe that status—and the potential for individual supervisor liability that accompanies it—should turn on whether the supervisor was free to exercise his or her sole discretion to arrive at the termination decision.

The amount of discretion that existed in any given case raises a fact issue. The question for the fact-finder is whether the supervisor in the particular set of circumstances at issue had the sole discretion to fire the employee. In short, was the job the supervisor's to give or take away? If so, the supervisor has the potential for joint and several liability for a workers compensation retaliatory discharge. If not, the supervisor does not have that potential. Only the entity employer does.

We illustrate the application of the rule we announce: A supervisor who (1) is merely following orders from a superior, (2) must have or seek the pre-approval of a superior or board, or (3) is simply responsible for tallying rule infractions such as absences and enforcing a firm company policy requiring termination when a specific total is reached does *not* have the freedom to exercise his or her sole discretion to arrive at the termination decision. As a matter of law, such a supervisor should not and shall not be individually liable for a workers compensation retaliatory discharge; to allow liability in such a situation would be shooting the mere messenger.

On the other hand, when a supervisor is charged by his or her employer with the freedom or sole discretion to decide who has a job and who does not, then, as a matter of law, the supervisor may be held legally responsible for damages suffered when he or she discharges an employee unlawfully. Exposure to the potential of joint and several liability with the employer for an unlawful termination is in keeping with the independence of the actor.

We do not interpret *Murphy* to limit the potential for a supervisor's individual liability in workers compensation retaliatory discharge actions to situations in which the supervisor's actions can be described as willful or wanton or outside the scope of his or her employment. The willfulness or wantonness of the supervisor's behavior may be determinative of whether punitive damages should be considered or awarded against him or her, but not of whether liability should attach in the first place. We read *Murphy*'s mention of its three supervisors' lack of authority for their actions merely as a function of the public employment context and the necessity of addressing the possibility of a governmental immunity defense. See 6 Kan. App. 2d at 494-95; but see *Edwards v. Western Mfg.*,

*Div. of Mont. Elev.*, 641 F. Supp. 616, 617 (D. Kan. 1986) (in dicta reading *Murphy* to require willful and wanton conduct).

On the record before us, we believe there exists a genuine issue of material fact on whether Barber had the sole discretion to fire Rebarchek on behalf of Farmers. If so, he can be held directly liable for his tort, and his liability will be joint and several with that of Farmers. If not, he cannot. We believe this rule adequately protects supervisors who merely deliver bad news and adequately deters those who would engage in the unlawful conduct that prompted the *Murphy* panel to recognize this cause of action.

### Punitive Damages

Rebarchek also seeks reversal of the district court's denial of his motion to amend his pleadings to add a claim for punitive damages. Our review of the record indicates that the district judge did not address the merits of Rebarchek's motion, finding that the decision to grant summary judgment made consideration of the merits of the punitive damages motion unnecessary.

Our typical standard of review for decisions on motions to amend to add claims for punitive damages is abuse of discretion. *Lindsey v. Miami County National Bank*, 267 Kan. 685, 689, 984 P.2d 719 (1999). " ' "Judicial discretion is abused when judicial action is arbitrary, fanciful or unreasonable, which is another way of saying that discretion is abused only where no reasonable [person] would take the view adopted by the trial court. [Citation omitted.]" ' " 267 Kan. at 689.

Because there was no ruling on the merits of the motion to amend to add a claim for punitive damages in this case, we cannot judge the propriety or impropriety of the judge's exercise of discretion. "When a trial court's findings of fact and conclusions of law are inadequate to disclose the controlling facts or the basis of the court's findings, meaningful appellate review is precluded and the case will be remanded to the trial court for additional findings of fact and conclusions of law." *Burch v. Dodge*, 4 Kan. App. 2d 503, Syl. ¶ 1, 608 P.2d 1032 (1980). We remand the motion for further action on its merits by the district court.

## Recovery for Emotional Distress

The parties also appear to disagree on whether and to what extent Rebarchek may recover for emotional distress suffered as a result of his discharge. Farmers and Barber take the position that Rebarchek cannot recover for emotional distress because there is no medical proof of a physical personal injury.

We agree that, if Rebarchek were pursuing claims for outrage (intentional infliction of emotional distress) or for negligent infliction of emotional distress, each claim would fail as a matter of law. Kansas requires that the conduct of a defendant be extreme and outrageous before a plaintiff can recover for outrage, and we see no evidence of extreme and outrageous behavior in this case. See *Miller v. Sloan, Listrom, Eisenbarth, Sloan and Glassman*, 267 Kan. 245, 257, 978 P.2d 922 (1999). With regard to a negligent infliction claim, Farmers and Barber are right that a plaintiff must come forward with some evidence of physical injury to recover; Rebarchek has not done so. See *Anderson v. Scheffler*, 242 Kan. 857, 860, 752 P.2d 667 (1988); *Reynolds v. Highland Manor, Inc.*, 24 Kan. App. 2d 859, 861, 954 P.2d 11 (1998).

This does not necessarily rule out any recovery for pain and suffering, however. Farmers and Barber are being sued for an intentional tort—retaliatory discharge for filing a workers compensation claim. We agree with the Tenth Circuit that Kansas law would permit recovery for mental or emotional pain and suffering without physical injury in a retaliatory discharge action. See *Southwest Forest Industries, Inc. v. Sutton*, 868 F.2d 352, 356 (10th Cir. 1989); *Flenker v. Willamette Industries, Inc.*, 68 F. Supp. 2d 1261, 1268 (D. Kan. 1999). Although plaintiffs wishing to recover for such damages generally would be well advised to sponsor expert psychiatric or psychological testimony on their existence and extent, we are unwilling to require it in every case. On the contrary, we believe it wise to leave the determination of the necessity and sufficiency of expert evidence on these points to the sound discretion of the district judge who will try the case.

## Consideration of Previous Testimony

Rebarchek also complains on appeal that the defendants impermissibly relied upon transcripts of unemployment compensation

and workers compensation benefits hearings to support their motion for summary judgment. Rebarchek cites K.S.A. 60-256(c), pointing out that its list of potential summary judgment support documents omits such transcripts. He also relies on K.S.A. 44-714(f), which prohibits the discovery or admission of unemployment compensation benefits hearing transcripts in "any other proceeding, hearing or determination of any kind or nature."

Our decision to reverse and remand this case for trial means the issue of whether previous testimony of this type is appropriate for consideration on summary judgement is moot. We therefore express no opinion on it.

Reversed and remanded for trial consistent with this opinion.