(69 P.3d 208)
No. 86,857

WELFORD S. WHITE, *Appellant,* v. NICK TOMASIC, *Appellee.*

—

Opinion filed May 23, 2003.

*R. Bruce Kips,* of Shawnee, for appellant.

*Marty Snyder* and *Eliehue Brunson,* assistant attorney generals, and *Carla J. Stovall,* attorney general, for appellee.

Before BEIER, P.J., JOHNSON, J., and TIMOTHY G. LAHEY, District Judge, assigned.

JOHNSON, J.: Welford S. White appeals from the district court's granting of judgment as a matter of law in favor of Wyandotte County District Attorney Nick Tomasic, in White's retaliatory discharge lawsuit which alleged that Tomasic fired White because he had filed a workers compensation claim. We reverse the district

court's determination that White failed to establish a prima facie case of retaliatory discharge.

White was working as an investigator for the district attorney's office when he was injured in a slip and fall on March 7, 1995. White filed a workers compensation claim for this accident, albeit the exact date of the claim is unclear from the record. The county personnel office arranged for White to receive medical treatment from Dr. Foster at Occupational Medicine Society. Foster released White from treatment in May 1995.

Shortly thereafter, White requested additional medical treatment, and the county personnel director told White to see his own doctor. White sought and obtained treatment from Kaiser Permanente, his regular health care provider. On September 25, 1995, White gave Tomasic's secretary a written request asking that the days off in therapy for his work-related injuries not be charged as vacation or sick leave. Three days later, White saw Dr. Ise at Kaiser Permanente, who signed a "return to work" form instructing that White should "stay off of work until further notice." That same day, White provided Tomasic's office with a copy of the work restriction.

The following day, Tomasic sent White a letter denying his request to refrain from charging leave time for the days spent in therapy, noting that White had 3.75 sick days and 4.5 vacation days remaining until February 1996 and advising White that each day he was off work "in accordance with the notification received from Kaiser Permanente" would be marked accordingly. White did not come to work or contact his supervisors between September 28th and October 18th, although he apparently called and informed the juvenile department office coordinator, Marie Collins, that he would be off work for a little longer. Collins was not White's supervisor or authorized to approve his leave time.

On October 11, 1995, Tomasic sent White a letter notifying him that he was an "excessive user of sick leave" and attached a copy of the sick leave and leave of absence without pay provisions of the Wyandotte County Personnel Policy Guide. The letter noted that the office had no information as to the reason for White's absences and directed White's attention to the personnel policy section dis-

cussing the required content of a physician's statement, which stated: "The statement shall contain the physician's report as to the cause for the employee's absence, the probable length of time of the necessary sick leave, and the physician's statement that the employee was unable to work the day that he/she was absent." The following day, White's attorney notified Tomasic in writing that White was not working pursuant to Dr. Ise's instructions and that White was in the process of pursuing a workers compensation claim. Tomasic's October 16th response letter explained that White was "in violation of Section V of the Rules and Discipline section of the Wyandotte County Personnel Policy Guide [due to] 'absence[s] without an excusable reason for three (3) consecutive days' " and threatened that White would be terminated unless Tomasic received the medical report required by the personnel policy by return mail.

On October 18, 1995, White met with Tomasic to discuss Tomasic's October 16th letter. White advised Tomasic that White was unable to get the requested medical report until the following week. At some point during the meeting, Tomasic fired White.

Later, White filed a grievance with the county, claiming that he was terminated because he is an African-American. He filed similar complaints with the Equal Employment Opportunity Commission and the Kansas Human Rights Commission. Then, in October 1997, White filed a retaliatory discharge lawsuit against Tomasic and the Board of County Commissioners of Wyandotte County. The district court granted Tomasic summary judgment because White was judicially estopped from proceeding to trial on his retaliatory discharge theory given his previous claims of racial discrimination and because the evidence was insufficient to support White's claim.

On appeal, this court reversed and remanded the case because we were unable to find that White had contradicted his statements made in his racial discrimination complaint and disputes of material fact remained. *White v. Tomasic*, No. 82,107, unpublished opinion filed December 10, 1999. At trial after remand, Tomasic moved for a "directed verdict" following White's presentation of evidence, alleging White had failed to prove a prima facie case of retaliatory

discharge. The trial judge agreed and granted judgment as a matter of law in favor of Tomasic.

On appeal, White raises two issues: (1) Whether the district court erred in granting judgment as a matter of law in defendant's favor, and (2) whether the district court erroneously excluded testimony of the personnel policy guidelines used by the defendant.

## JUDGMENT AS A MATTER OF LAW

White maintains that he presented sufficient evidence of all four elements of retaliatory discharge and the district court erred in finding he had failed to establish a prima facie case. K.S.A. 2002 Supp. 60-250 permits a litigant to move for judgment as a matter of law under certain circumstances prior to submission of the case to the jury. Previously, this relief was known as a directed verdict, and we apply the former directed verdict standard of review when analyzing a judgment as a matter of law.

" 'When ruling on a motion for directed verdict, the trial court is required to resolve all facts and inferences reasonably to be drawn from the evidence in favor of the party against whom the ruling is sought. Where reasonable minds could reach different conclusions based on the evidence, the motion must be denied. A similar analysis must be applied by an appellate court when reviewing the grant or denial of a motion for directed verdict.' [Citation omitted.]" *Wilkinson v. Shoney's, Inc.*, 269 Kan. 194, 202, 4 P.3d 1149 (2000); *Anderson v. Employers Mutual Casualty Ins. Co.*, 27 Kan. App. 2d 623, 631, 6 P.3d 918, *rev. denied* 270 Kan. 897 (2000).

K.S.A. 2002 Supp. 60-250 (a)(1) provides:

"If during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue, the court may determine the issue against that party and may grant a motion for judgment as a matter of law against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue."

In granting Tomasic judgment as a matter of law, the trial judge stated:

"Well, I'm going to be late for a funeral, but I'm glad I took this time now. It was worth hearing the arguments. I suppose in the 20 years that I've been on the bench I know that the toughest decisions for judges to make are — revolve around those kind of instances where you kind of make a motion on — decisions on [a]

motion for directed verdict. It's so easy for the jury just to do it, and it takes the heat off of the judge. I think most of the time I think that's what judges do, but I'm going to tell you something. My situation on analysis of this case, after hearing the evidence that's been presented by the plaintiff, is such that I really wouldn't vote my conscience. I wouldn't rule according to my conscience, and to my best judgment. If I didn't rule the way I'm about to rule and that is that I don't think a prima facie case has been made. I really don't and if I were to rule otherwise somebody would say it's just because you just don't want to take the heat. You want to let the jury do it, put it on the jury's back, but I've got to do what I think is right and I really believe this is right and incidentally I already requested the *Ramirez* case. That was helpful. I saw some of that was eluded to that were proposed but the motion for directed verdict is granted. That will be the order of the Court."

Kansas recognizes a tort for discharge in retaliation for exercising rights under the Kansas Workers Compensation Act, K.S.A. 44-501 *et seq*. *Murphy v. City of Topeka*, 6 Kan. App. 2d 488, 495-97, 630 P.2d 186 (1981). The Kansas Supreme Court has adopted the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 36 L. Ed. 2d 668, 93 S. Ct. 1817 (1973), to analyze retaliatory discharge claims based on discrimination. *Woods v. Midwest Conveyor Co.*, 231 Kan. 763, 766, 648 P.2d 234 (1982). This same analysis applies to workers compensation retaliatory discharge cases. *Rebarchek v. Farmers Co-op Elevator & Mercantile Ass'n*, 272 Kan. 546, 553, 35 P.3d 892 (2001).

" 'The burden "is on the complainant to prove by a preponderance of the evidence that the respondent is guilty of a discriminatory practice. Initially, the complainant must present a prima facie case of discrimination. Then the burden of going forward with the evidence shifts to respondent and this burden may be discharged by evidence of a legitimate, nondiscriminatory reason for respondent's conduct. Once the respondent discharges this obligation, the complainant must continue with the burden of proving by a preponderance of the evidence that the reasons offered by respondent were merely a pretext for discrimination." ' " 272 Kan. at 552-53 (quoting Woods, 231 Kan. 763, Syl. ¶ 2).

The elements of a prima facie claim for retaliatory discharge for filing a workers compensation claim are: (1) The plaintiff filed a claim for workers compensation benefits or sustained an injury for which he or she might assert a future claim for such benefits; (2) the employer had knowledge of the plaintiff's workers compensation claim injury; (3) the employer terminated the plaintiff's em-

ployment; and (4) a causal connection existed between the protected activity or injury and the termination. *Rebarchek*, 272 Kan. at 554.

Although the district court failed to specify which element(s) were unsupported by the evidence, Tomasic conceded at oral argument that the evidence was sufficient to establish a prima facie showing of the first three elements. If the district court is to be affirmed, we must find there is not a legally sufficient evidentiary basis upon which a reasonable jury could find a causal connection between White's workers compensation claim and his termination of employment. The evidence presented precludes us from so finding.

Employers rarely admit to retaliatory intent, and plaintiffs must ordinarily rely on circumstantial evidence to prove a prima facie case of retaliatory discharge. *Marinhagen v. Boster, Inc.*, 17 Kan. App. 2d 532, 540, 840 P.2d 534 (1992), *rev. denied* 252 Kan. 1092 (1993). Proximity in time between the claim and discharge is a typical beginning point for proof of a causal connection. 17 Kan. App. 2d at 540. Close temporal proximity between a workplace injury or the filing of a workers compensation claim and the adverse employment action may be "highly persuasive evidence of retaliation." *Gertsch v. Central Electropolishing Co.*, 29 Kan. App. 2d 405, 409, 26 P.3d 87, *rev. denied* 272 Kan. 1417 (2001).

This court recently held that a 5-month span between the filing of a workers compensation claim and termination of employment was insufficient to establish a causal connection. *Rebarchek v. Farmers Co-op Elevator & Mercantile Ass'n*, 28 Kan. App. 2d 104, 110-11, 13 P.3d 17 (2000), *aff'd in part, rev'd in part* 272 Kan. 546, 35 P.3d 892 (2001). In so holding, the Court of Appeals stated:

"Although our Supreme Court has not specifically addressed the issue of what constitutes an acceptable period of time between the claim and the discharge, the federal courts have done so. In *Nguyen v. IBP, Inc.*, 905 F. Supp. 1471, 1482 (D. Kan. 1995), the court found that 5 months may be too remote. See also *Spradley v. Custom Campers, Inc.*, 68 F. Supp. 2d 1225, 1235 (D. Kan. 1999) (10-month span between filing of a workers compensation claim and termination insufficient to establish causal connection); *Conner v. Schnuck Markets, Inc.*, 121 F.3d 1390, 1395 (10th Cir. 1997) (absent additional evidence, 4-month span between protected activity and alleged retaliation insufficient for prima facie case); *Filipovic*

*v. K & R. Exp. Systems, Inc.*, 176 F.3d 390, 399 (7th Cir. 1999) (4-month span between filing of charges with EEOC and termination a substantial lapse of time; lapse constituted counter-evidence of any causal connection)." 28 Kan. App. 2d at 110.

The Kansas Supreme Court granted a petition for review in the *Rebarchek* case and held that the passage of slightly more than 5 months between the plaintiff's filing of his workers compensation claim and his discharge "probably approaches the limit that would be recognized as part of a pattern for the purpose of establishing a causal connection between the protected activity and termination." 272 Kan. at 556.

In his brief, Tomasic argues that we must look at the 7-month time period between the March 7, 1995, injury and the October 18, 1995, termination, and, if White cannot establish a pattern of retaliatory conduct during this period, he has not made a prima facie showing of casual connection. On the other hand, White applies the temporal proximity test to the 3-week period of time following his submission of the work-restriction form from Kaiser Permanente and the 1-week period following his attorney's written notification that White was off work due to a work-related injury for which White was pursuing workers compensation relief.

At oral argument, Tomasic conceded that an employer's termination of employment in response to an employee's work absences caused by a work-related injury constitutes an impermissible retaliatory discharge. The evidence unquestionably establishes that White was fired for missing work; Tomasic's October 11, 1995, letter even refers to the excessive use of sick leave. In such a scenario, the temporal proximity analysis is logically applied to the time period between the work absences and the employment termination. Viewing the evidence in a light most favorable to White, the work absences which prompted his termination began on September 28th and he was terminated on October 18th. This temporal proximity is sufficient to establish a prima facie showing of causal connection and to avoid a judgment as a matter of law.

Tomasic contends that he did not know why White was missing work; White failed to provide the medical report required by the personnel guidelines. This argument ignores the fact that Tomasic

had received the written notification from White's attorney prior to firing White. White presented evidence, which if believed, would support a finding that he was fired for missing work for a work-related injury.

Tomasic argues further that he did not know or care whether White had filed a workers compensation claim; he was concerned with White's being off work without notice and without arranging a leave of absence. However, as Tomasic points out in arguing the second issue on appeal, the district court terminated the action prior to the shifting of the burden of proof to Tomasic to show his termination reasons were not pretextual. Therefore, we do not even consider whether Tomasic had a valid reason for terminating White. The question presented is whether White presented sufficient evidence from which a reasonable jury could find that he was terminated for work absences related to a workers compensation injury. We find the evidence sufficient to preclude judgment as a matter of law, and we reverse and remand for a new trial.

## EXCLUSION OF TESTIMONY

White complains that the trial judge refused to allow him to question Tomasic about the Wyandotte County personnel policy guidelines. Although the issue is moot, given our decision on the first issue, we will discuss the question as an aid for the district court on retrial.

Tomasic referred to the policy guidelines in his testimony. When White's attorney attempted to cross-examine Tomasic on other guidelines provisions, the trial judge sustained Tomasic's objection, stating:

"Those guidelines, as far as what the Court is concerned are in his mind, those are guidelines that he set up in the mind. He may have been using part of those guidelines but since he wasn't [bound] by them he might have been using a portion of them and not a portion of them. He may have used them sometimes and then not other times."

Apparently, the district court was persuaded by Attorney General Opinion No. 92-158, which opined that a county attorney is not bound by the county's personnel policies and procedures.

The district court's exclusion of the testimony is troublesome, given that Tomasic was relying heavily, if not exclusively, upon the guidelines provisions to justify his termination of White. There appears to be nothing to preclude Tomasic from adopting the county's guidelines as policy for his office. Even if we can accept the district court's finding that Tomasic could use whatever portion of the guidelines he chose, whenever he felt like applying them, then that fact was germane to the jury question regarding the validity of the termination for violating the guidelines. Upon retrial, White should be permitted to fully explore the extent to which Tomasic applied the county's guidelines.

Reversed and remanded with directions.