FILED
United States Court of Appeals
Tenth Circuit

March 20, 2013

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

MICHAEL GEBHARDT,

Plaintiff-Appellant,

v.

EXIDE TECHNOLOGIES,

Defendant-Appellee.

No. 12-3117
(D.C. No. 5:10-CV-04142-JTM)
(D. Kan.)

**ORDER AND JUDGMENT**[*]

Before **HARTZ**, **EBEL**, and **GORSUCH**, Circuit Judges.

Michael Gebhardt sued his former employer Exide Technologies, claiming that he was discharged in retaliation for filing a workers' compensation claim and for taking leave under the Family and Medical Leave Act (FMLA), 29 U.S.C. §§ 2601-2654. The district court granted summary judgment in favor of Exide. We have jurisdiction under 28 U.S.C. § 1291 and affirm.

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

# I. BACKGROUND

Exide produces, distributes, and recycles lead-acid batteries. Mr. Gebhardt began his employment with Exide on June 9, 2002, as an assembly operator and later moved to the pasting department. In March of 2003 he injured his arm and shoulder and filed a workers' compensation claim. Over the next few years he received medical treatment for his injury, and by mid-August 2007 he had reached maximum medical improvement. During his recovery he took various periods of time off work under the FMLA.

The incident leading to Mr. Gebhardt's termination occurred on August 23, 2008. While acting as a lead person, he observed two workers 15 to 30 feet away who were talking to each other. Assuming that they were chatting instead of working, he waved at them to move on, but they did not respond. He was holding a paint pen, which flew out of his hand and hit one of them, Nancy Arias.[1] Shortly thereafter, he was found crouching on the floor either looking for the paint pen or hiding behind a "doghouse," which is a covered structure within the plant where palletized plates are placed for pickup. Ms. Arias immediately reported to her supervisor that she believed that Mr. Gebhardt had thrown the pen at her. The supervisor, Jeff Mitchell, took written statements from Mr. Gebhardt and Ms. Arias. Mr. Gebhardt wrote:

> Saturday at about 8:20 AM I was trying to get Nathan Kendrick's attention[.] [H]e was about 25' to 30' feet from me on his stand up fork truck. Nancy Ari[a]s was next to him on her truck – they were both in front of line six. I was on line two – I yelled first then I tossed a marker to get his attention [and] it slipped and hit Nancy.

---

[1] A paint pen appears to be a marker in a metal tube about the size and shape of a regular felt-tipped marker.

Aplee. Supp. App. at 90.

Exide's Human Resources Manager, Jayne Cornish, conducted an investigation. Mr. Gebhardt told her that the paint pen had slipped from his hand. A witness, Tomas Torres, reported: "Mike [Gebhardt] yelled to Nancy [Arias] and Nathan [Kendrick] 'Don't talk' then Mike threw something. Afterwards Mike was hiding behind the doghouse. [I] asked Mike what he was doing. Mike said, 'I threw a pen but I didn't mean to hit anyone.'" Aplee. Supp. App. at 84. And Mr. Kendrick stated that he saw the paint pen hit Ms. Arias's head and then saw Mr. Gebhardt hiding behind a doghouse.

After completing her investigation, Ms. Cornish met with Plant Manager John Pfeiffer and Production Manager Jeff Woods. Ultimately, they decided to discharge Mr. Gebhardt for committing three "Dischargeable Type Offenses" set forth in the Exide Employee Handbook: personal conduct (which includes disorderly, immoral, or indecent conduct), disorderly conduct, and safety. He was informed of the decision on September 3, 2008. In the meantime, on August 19, 2008, Mr. Gebhardt was awarded a lump-sum settlement of $50,000 on his March 2003 workers' compensation claim.

## II. DISCUSSION

### A. Standard of Review

"We review the district court's grant of summary judgment de novo, applying the same standards that the district court should have applied." *Sabourin v. Univ. of Utah*, 676 F.3d 950, 957 (10th Cir. 2012) (internal quotation marks omitted). Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "We evaluate the evidence in the light most favorable to the non-moving party." *Sabourin*, 676 F.3d at 957 (internal quotation marks omitted).

### B. Workers' Compensation Retaliation Claim

Under Kansas law the ultimate burden at trial for a workers' compensation retaliation plaintiff is clear and convincing evidence. *See Ortega v. IBP, Inc.*, 874 P.2d 1188, 1198 (Kan. 1994). Evidence is clear and convincing when "the factfinder believes that the truth of the facts asserted is highly probable." *In re B.D.-Y.*, 187 P.3d 594, 602 (Kan. 2008) (modifying *Ortega*'s definition).

Mr. Gebhardt asserts that the district court placed an improper burden on him at the summary-judgment stage by requiring him to "demonstrate [the] causal relationship [between the protected activity and the termination] by a preponderance of the evidence that is clear and convincing in nature." Aplt. App. Vol. II at 370-71. He argues that he does not need to prove his claim by clear and convincing evidence to avoid summary judgment, but must only present enough evidence that a jury could be so convinced. He

is correct.  Accordingly, on our de novo review of the summary judgment, we will examine only whether Mr. Gebhardt met that standard.

Kansas law prohibits employers from firing employees for being absent because of work-related injuries or for filing a workers' compensation claim.  *See Ortega*, 874 P.2d at 1191.  Kansas has adopted the analytic framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), for analyzing workers' compensation retaliatory-discharge cases.  *See Rebarchek v. Farmers Coop. Elevator and Mercantile Ass'n*, 35 P.3d 892, 898 (Kan. 2001).  Initially, the plaintiff must present a prima facie case of retaliation, *see id.*; that is, the plaintiff must show that (1) he filed a claim for workers' compensation benefits or suffered an injury for which he could file such a claim, (2) the employer knew of the claim or injury, (3) the employer terminated the plaintiff's employment, and (4) there was a causal connection between the injury or protected activity and the termination.  *See Gonzales-Centeno v. N. Cent. Kan. Reg'l Juvenile Det. Facility*, 101 P.3d 1170, 1177 (Kan. 2004).  The employer must then identify a legitimate, nonretaliatory reason for the termination.  *See Rebarchek*, 35 P.3d at 898.  If the employer does so, the burden shifts back to the plaintiff to demonstrate that the stated reason was a pretext for unlawful retaliation.  *See id.*

The district court determined that Mr. Gebhardt did not make out a prima facie case because he failed to produce sufficient evidence of a causal connection between protected activity and his termination.  The court noted that Mr. Gebhardt's discharge on September 3, 2008, was long after his injury and workers' compensation claim in March of 2003 and the end of his medical treatment in mid-2007.  The court further observed

that Mr. Gebhardt had "conceded in his deposition that no one in Exide management criticized his workers' compensation claim [and] [t]here [was] no evidence that any of the managers even knew of the workers' compensation award at the time of the decision to terminate [him]." Aplt. App. Vol. II at 371.

We agree that Mr. Gebhardt did not present evidence from which a reasonable jury could find that causation had been established by clear and convincing evidence. His injury and workers' compensation claim were in 2003. It is unreasonable to believe that his employer would wait more than five years to retaliate, particularly when there is no evidence of any retaliation or hostility in the interim.

Mr. Gebhardt attempts to counter this common-sense view with several arguments. None are convincing. First, he contends that the August 19, 2008, settlement of his workers' compensation claim was protected activity. Because it occurred just two weeks before he was fired on September 3, 2008, he argues that the temporal proximity of the two events established the necessary causal connection. Mr. Gebhardt is correct that "[c]lose temporal proximity between a workplace injury or the filing of a workers compensation claim and the adverse employment action may be highly persuasive evidence of retaliation." *White v. Tomasic*, 69 P.3d 208, 212 (Kan. Ct. App. 2003) (internal quotation marks omitted). But he has adduced no evidence that any of the decisonmakers were aware of the settlement when they decided to discharge him. Although Mr. Gebhardt asserts that Ms. Cornish had such knowledge, the testimony on which he relies does not support this assertion. Ms. Cornish testified that she would not have been informed at the time Mr. Gebhardt received a settlement check, and that she

had heard about the date of the settlement from listening to Mr. Gebhardt's deposition in this litigation. Thus, even if the settlement was protected activity, he has failed to produce evidence that it influenced his termination.

Second, Mr. Gebhardt asserts that Ms. Cornish had a history of firing other injured employees under circumstances indicating retaliation. But the record does not support this assertion either. He refers only to the deposition of Ms. Cornish at which Mr. Gebhardt's attorney voiced various allegations that were denied by Ms. Cornish. The matters that she admitted would not support an inference that she fired qualified employees because of their injuries or workers' compensation claims.

Finally, Mr. Gebhardt relies on a statement in his affidavit that Jeff Mitchell, his supervisor, had told him, "If you get hurt at work, you will be gone sooner [than two years]." Aplt. App. Vol. II at 276. The statement in his affidavit, however, is in tension with his prior deposition testimony that no one at Exide had commented negatively about his injuries. The district court excluded the statement in the affidavit under the sham-affidavit doctrine. *See Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 973 (10th Cir. 2001) (listing criteria for evaluating whether an affidavit creates a sham fact issue). But even if we credit that statement, it is not enough to create a genuine dispute of fact on causation. Mr. Gebhardt did not provide the context (even the date) of Mr. Mitchell's remark, Mr. Mitchell was not a decisionmaker with regard to Mr. Gebhardt's dismissal, and, contrary to the suggested meaning of the remark, Exide in fact retained Mr. Gebhardt for another five-and-a-half years after his injury. One could

not reasonably infer from the remark (particularly under a clear-and-convincing-evidence standard) that Mr. Gebhardt was fired because of his workers' compensation claim.

We therefore affirm the summary judgment on Mr. Gebhardt's workers' compensation retaliation claim.

### C. FMLA Retaliation Claim

Under the FMLA, qualified employees may take up to 12 weeks of leave during a 12-month period if "a serious health condition . . . makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). The FMLA makes it unlawful "for any employer to interfere with, restrain, or deny the exercise of" the rights provided by the FMLA, *id.* § 2615(a)(1), or to "discharge . . . any individual for opposing any practice" prohibited by the FMLA, *id.* § 2615(a)(2).

Mr. Gebhardt contends that he was discharged in retaliation for taking FMLA leave. In analyzing such a claim we again follow the *McDonnell Douglas* framework. *See Brown*, 700 F.3d at 1229. As with the worker's compensation claim, the FMLA claim fails for lack of sufficient evidence of causation.

Mr. Gebhardt concedes that temporal proximity alone would not establish causation—his final use of FMLA leave was no later than August 2007, and his termination was on September 3, 2008. But he argues that other evidence of causation suffices. We disagree. We have already rejected his assertion that the record would support a finding that Ms. Cornish regularly fired qualified employees who were injured. We also reject his reliance on the assertion in his affidavit that Mr. Mitchell had told him that "if [he] took all 90 days of FMLA leave, . . . [his] day shift would be taken away

- 8 -

from [him] and [he] would be forced to work at night." Aplt. App. Vol. II at 276. The district court struck the assertion under the sham-affidavit doctrine. But, again, we need not review that ruling because the assertion does not create a genuine dispute of fact on causation. We note in particular that Mr. Mitchell was not a decisionmaker in Mr. Gebhardt's termination and Mr. Gebhardt does not tell us whether he had taken 90 days of FMLA leave. Finally, we are not persuaded by Mr. Gebhardt's argument that causation can be inferred from the allegedly excessive sanction for his misconduct. He does not dispute that the employee handbook contemplated termination for the misconduct, and his lying about the incident would be an aggravating factor.

Accordingly, we affirm the summary judgment on the FMLA claim.

### III. CONCLUSION

The judgment of the district court is affirmed.

Entered for the Court

Harris L Hartz
Circuit Judge